CINCINNATI, N. O. & T. P. RY. Co. *v.* EVA WRIGHT.*

(*Knoxville.* September Term, 1915.)

1. **RAILROADS.** Actions for injury or death. Confusing instructions.

In an action for the death of a person struck by a railroad train while standing at a point on a sharp curve, it was the theory of the company sustained by proof that a south-bound train was so interposed between deceased and the engine which struck him that deceased and his companion could not be seen from the engine. Plaintiff requested a charge that, if deceased could have been seen on the track by one on the lookout ahead before the view was cut off by the south-bound train, the law required that he be seen, and, though the south-bound train subsequently cut off the view, it was the duty of those operating the train to reduce the speed and bring the train under such control as to make certain that it could be stopped after he could again be seen and before striking him. The court so charged, with the modification that, if deceased again appeared upon the track, it was the duty of those on the engine not to so control the train as to be certain that it could be stopped before striking deceased, but to sound the alarm, put down the brakes, and use every possible means to stop the train and prevent the accident. *Held,* that this instruction, with the modification, was at least confusing to the jury. (*Post, pp.* 77-79.)

2. **RAILROADS.** Injuries to persons on track. Keeping "lookout ahead."

Under Shannon's Code, sec. 1574, providing that every railroad company shall keep the engineer, fireman, or some other person upon the locomotive always upon the "lookout ahead," enginemen are not required, when on a curve, to look across the intervening space to the further end of the curve, thereby

---

*On duty of railroad to maintain lookout for persons on track see notes in 25 L. R. A., 287, 8 L. R. A. (N. S.), 1069, 41 L. R. A. (N. S.), 264.

As to what places and operations statute or ordinance requiring lookout on trains applies. See note in 51 L. R. A. (N. S.), 618.

C., N. O. & T. P. Ry. Co. v. Wright.

withdrawing the lookout from the track immediately ahead of the engine. (*Post, pp.* 79-81.)

Cases cited and approved: East Tennessee, etc., R. Co. v. St. John, 37 Tenn., 525; Patton v. Railway, 89 Tenn., 370; Cincinnati, etc., Co. v. Brock, 132 Tenn., 477; Central, etc., Co. v. Vaughan, 93 Ala., 209.

Code cited and construed: Sec. 1574 (S.).

3. **RAILROADS. Injuries to persons on track. Rate of speed on curves.**

As a precaution against injury to persons walking on the track, but not seen or known so to be, there is no duty to slacken the ordinary speed of a train approaching a curve in the open country, though the curve be in whole or in part in a cut or hidden from view by a train going in the opposite direction on the concave side of the curve. (*Post, pp.* 81, 82.)

Case cited and distinguished: Hoffard v. Illinois Cent. R. Co., 138 Iowa, 543.

---

## FROM SCOTT.

---

Error to the Criminal and Law Court of Scott County.—XEN. HICKS, Judge.

H. M. CARR, for plaintiff in error.

J. A. FOWLER and R. HURT, for defendant in error.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

In the capacity of widow, and seeking to recover under the statute for the benefit of herself and her minor children, Eva Wright brought this suit against the appellant railway company to recover damages for the alleged negligent killing of her husband. She re-

covered a judgment for $1,000, which was sustained by the Court of Civil Appeals.

On August 31, 1913, deceased, Wright, along with one James Thompson, went from their home to a point on the Tennessee-Kentucky State line to lay in a supply of "Labor Day" whisky. On their return, with their whisky in a basket and a bag, they made use of the tracks of appellant railway company as a walkway. The line of railway is double-tracked in that section, and the two men were walking south on the west or south-bound track, when they heard a freight train approaching from the north. They left the west track and went upon the east or north-bound track, and, when the south-bound train was passing them, they turned and faced the passing train and waved at the fireman on the engine of the south-bound train. While standing thus engaged on the north-bound track, a freight train running north ran upon them, instantly killing Wright. Thompson, who was standing within a few feet of Wright, further from the approaching engine, and within striking distance of the same, was struck and injured. He had so far recovered as to be the chief witness in behalf of the widow of Wright in the trial of this case in the court below.

Thompson testified that when his attention was first attracted by the north-bound engine it was about to hit Wright, or was within three or four feet of him. It does not appear whether deceased Wright ever saw this engine; he having been instantly killed by it. It

is the claim of appellee that the statutory alarm signal was not sounded from the north-bound engine.

The record shows that these men were struck while standing at a point on a sharp curve of about three and one-half to four degrees curvature, and that in this curve was a cut about twelve feet deep.

The lower end of this curve was a considerable distance from the place where these men stood looking at the train passing on the west track, which track is on the concave side of the curve.

It was the theory of the railway company (sustained by proof) that the south-bound train was so interposed between the engine of the north-bound train and these men as that they could not be seen as an obstruction on the track ahead of the engine; that the intervening train on the inside of the curve interfered with the line of vision from the engine to the point where the deceased stood; and further, that it was not the duty of the engineer or fireman to look to or directly in the direction of a point towards the upper end of the curve, if thereby attention was withdrawn from the track more immediately in front of the engine; in other words, that it was no part of their duty to look across the intervening space, when their line of vision would be directed away from the points on the track more immediately ahead of the advancing engine.

The counsel for the plaintiff widow, in an effort to meet this contention, submitted a request for a charge to the jury as follows:

"If the deceased, Eck Wright, could have been seen as an obstruction upon the north-bound track by one on the lookout ahead, on either the engineer's or fireman's side of the engine, before the view was cut off by the south-bound train, then the law required that he be seen by such person on the lookout, and, though the south-bound train subsequently cut off the view of said Wright, yet it was the duty of those operating the north-bound train to reduce speed and bring the train under such control as to make certain that it could be stopped after said Wright could again be seen, and before striking him."

The trial judge responded to this request in the following language:

"I instruct you that this is the law, with this modification, however, that if the deceased again appeared upon the track, it was the duty of the agents and servants of the defendant on the engine not to so control the train as to be certain that it could be stopped before striking Wright, but to sound the alarm, put down the brakes, and use every possible means to stop the train and to prevent the accident."

The railway company assigned this action of the trial judge as error in the Court of Civil Appeals, but that court failed to see error in the request as modified by the trial judge.

The request, with the grafted modification, must at the least have been confusing to the jury. We ourselves think it subject to the construction that it gave the jury to understand that, while it was not the duty

of the enginemen on the north-bound train to so control the train as to be certain that it could be stopped before striking Wright, yet that it was their duty to so control the train as that the statutory precautions could be observed if and when deceased, Wright, again appeared in the view of the enginemen as an obstruction upon the track as they looked immediately ahead. Otherwise it seems that the trial judge would have refused the request outright.

Giving the charge this construction, it could only be held to be correct if the proposition of law advanced by appellee's counsel is sound, to wit: That the enginemen should, as by way of legal requirement, have maintained such a lookout ahead as that they could have discovered Wright as an obstruction on their track at or near the head of the curve, in order to preparation for the observance of the precaution, even if, to do so, they would be called to direct the line of vision away from the track, and striking distance thereof, across the "bowstring" of the curve.

May the statute, stringent as it is, be given any such construction? The language of the statute (Code, Shannon, sec. 1574) in respect to the duty imposed is "always upon the lookout ahead; and when any person, animal or other obstruction appears upon the road," the precautions shall be observed. The phrase "lookout ahead" in an early case was treated as equivalent to "ahead on the track" (*East Tennessee, etc., R. Co.* v. *St. John,* 5 Sneed [37. Tenn.] 525, 73 Am. Dec. 149), and to mean "the direction in which the en-

gine is moving" (*Patton* v. *Railway*, 89 Tenn. 370, 15 S. W., 919, 12 L. R. A., 184). The burden of showing compliance with the prescribed precautions arises only when the object appears on the track or within striking distance. *Cincinnati, etc., R. Co.* v. *Brock*, 132 Tenn., 477, 178 S. W., 1115.

A defense interposed by a railway company, in a case involving an injury to one on a curve, that its operatives on the engine were looking out across the intervening space at an object on the further end of the curve, would not be yielded to by the court as an excuse for their failure to observe an obstruction on the track appearing ahead of and near to the engine.

Only one case has been called to our attention that bears on the point, *Central, etc., Co.* v. *Vaughan*, 93 Ala., 209, 9 South., 468, 30 Am. St. Rep., 50, where it was held that the engineer on a moving train approaching a distant trestle on a curve in a cut is under no common-law duty (there being no statute governing the matter in Alabama) to withdraw his attention from the track in front of him and look across the country to see whether any one was on the trestle as an obstruction, and it was further held that evidence as to the fact that he might have seen such person on the trestle before entering the curve at a distance of 400 yards was not relevant or admissible on the question of negligence in failing to keep a proper lookout.

The principle may be sharply exemplified by an assumed case, that of a railroad, such as that of the plaintiff in error, running through a mountainous section,

making necessary sharp curves through deep cuts or tunnels. It cannot be maintained that the enginemen are required to look to the further end of such a curve, thereby withdrawing the lookout or line of vision from the track more immediately ahead of the engine thus assumed to be in or approaching the cut or tunnel.

The above charge of the trial judge imposed an undue burden on the railway company, and constitutes reversible error.

There is, furthermore, no duty to slacken the ordinary speed of a train approaching a curve in the open country, although the curve be in whole or in part in a cut, as a precaution against injury to persons walking on the track, but not seen or known so to be. *Hoffard* v. *Illinois Cent. R. Co.*, 138 Iowa, 543, 110 N. W., 446, 16 L. R. A. (N. S.), 797, in which case the court said:

"No court has ever gone so far as to hold that it is incumbent on a railroad company to slacken the ordinary speed of its trains upon the approach to every curve in the track, which involves also a cut, as a precaution against injury to persons walking or working on the track. The reasons why such should not be the rule are obvious. Present-day conditions demand the maximum of speed consistent with train safety, this not only as in the interest of the operating company, but as related to the interests of the general public. Under a rule as contended for, such would not be possible of attainment in this country, where cuts and curves are of great frequency."

133 Tenn. 6

The same principle is applicable to the situation presented on a double-track railway where a train is approaching and passing the one on which is the lookout, and which, being on the track on the concave side of the curve, tends to obstruct the forward vision of the lookout from the engine on the track on the convex side of the curve. There is no duty imposed by the law on the operatives of the company to slow down the speed of the train to prevent possible injury to some one who may be walking on the track obscured from vision by the intervening train. Such a rule would seriously retard the business of transportation, and the only reason for it would be the anticipation that some person was without license making use of the track not designed for his use.

The facts of this case demonstrate that a double-tracked railway line is a far more perilous place for pedestrians than a single-track line. These tracks are constructed at great expense in order to make transportation safer and speedier, but such increase of peril is an incident not avoidable by the railway company.

Owing to the disposition we make of the case, we do not think it necessary to pass on another assignment of error to the effect that the verdict is excessive; but we do think it proper to say that on a retrial of the cause it should be borne in mind that the increase of peril above noted should be deemed to augment the negligence of deceased if he stepped from one of such tracks to another without taking care for his own safety.

Other questions are disposed of orally.

Reversed, and the cause remanded for a new trial.