# TENNESSEE CENTRAL RAILWAY COMPANY v. WILLIAM H. HAYES.

Middle Section.   December 1, 1928.

Petition for Certiorari denied by Supreme Court, March 16, 1929.

J. B. Daniel and William Hume, of Nashville, for defendant in error.

Roberts & Roberts and Walter Stokes, of Nashville, for plaintiff in error.

DeWITT, J. The Tennessee Central Railway Company has appealed in error from a judgment, based upon the verdict of a jury, against it for $5000 in favor of William H. Hayes, as damages for

personal injuries sustained by Hayes from collision between an automobile truck being driven by him and a train of the company, at the crossing of Taylor street over the railway track of the company, in the City of Nashville.

The casualty occurred between the hours of ten and eleven on the morning of May 25, 1927. Plaintiff Hayes had for nearly seven months been employed by Jacobs Brothers Packing Company driving a delivery truck. Prior to that time he had been engaged in the same capacity in the employment of another packing company. He had had an experience of about seven years in driving trucks and other automobiles and during that time had been accustomed to crossing the railroad tracks at the place of the accident very frequently. Taylor street runs east and west beginning at Adams street which runs north and south and parallel with First avenue, and one block east of it. The Jacobs Brothers Packing Company's platform where the truck was loaded on the day of the accident is located on the south side of Taylor street at its corner with Adams street. From that place Taylor street extends westwardly from Adams street and crosses First avenue. Plaintiff Hayes drove the truck about a block until he reached the railroad crossing going along the north side of Taylor street. The defendant's train composed of an engine and nine freight cars was going northwardly on its track running along the west side of First avenue. The engine was pushing the cars and the front car was an oil tank car. The right hand corner of the front car struck the left side of the truck, lifted it somewhat and turned it over on the other side of the track and one of the plaintiff's legs was very badly broken.

On First avenue running northwardly from toward the center of the street were two parallel railway tracks, one on the east being that of the L. & N. Railroad Company, and the other being that of defendant Tennessee Central Railway Company. The distance from the east rail of the L. & N. track to the west rail is four feet nine inces; from the west rail of the L. & N. track to the east rail of the Tennessee Central track is eight feet nine inches. Thus the total distance from the east rail of the L. & N. track to east rail of the Tennessee Central track is thirteen feet six inches. Of course the plaintiff had first to cross the L. & N. track before he could go upon the Tennessee Central track. At the southeast corner of these two streets was the warehouse and mill of a lumber company, and immediately west of it and along the extreme side of First avenue was a storage track or siding, at the end of which stood a freight car projecting about four feet into Taylor street, that is to about the sidewalk line and constituting an obstruction to the vision until a traveler would come to a point about ten feet east of the L. & N. track. The plaintiff testified that there were also one or more freight cars on the L. & N. track somewhere south of Taylor street, which further obstructed his

vision. About fifty feet from the L. & N. track plaintiff stopped, listened and heard nothing to indicate that a train was approaching. Then about ten feet from the east rail of the L. &. N. track he again stopped. This point was twenty-three feet six inches from the east rail of the Tennessee Central track. Plaintiff testified that he could not see any train approaching until he was about four feet from the east rail of the L. &. N. track; that he was driving at the rate of about five to seven miles an hour; that when he saw the train he was perhaps a foot or two east of the L. & N. track, having driven 8 or 9 feet since he made his second stop. He said that he did not think that he could stop his truck so as to avoid a collision. In describing the situation presented when he saw the train he said, "The only thing I thought of then was to cut for the corner of the curb and try to beat it across and it hit me in the back of my truck along about where my rear fender couples on to the running board."

This crossing was in a thickly settled portion of the city having many residences and manufacturing plants. It was much frequented by people on foot and in wagons, trucks and other automobiles passing and re-passing at all times of the day, and their presence should have been expected there at any time.

The suit is based upon the alleged negligence at common law, of the defendant Railway Company. The declaration originally contained three counts but one of these was abandoned. In the first count relied on it is averred that in the operation of its cars and trains on the public streets and highways of the City of Nashville where people and vehicles are most of the time passing, the Railway Company is required to exercise great care and caution not to run over and injure people lawfully using said streets and highways; and that on the aforesaid day while the plaintiff was driving the truck crossing First avenue, in the exercise of due care, the defendant through its agents and employees carelessly, negligently and without notice or warning backed a train of box or freight cars into, upon and against him, seriously injuring him. In the second count relied on it is averred that at this grade crossing there were box cars and buildings that cut off and obscured from the plaintiff the view of an approaching car or train of cars and these facts and conditions were well known to defendant, its agents, servants and employees; that these obstructions to the view, making this blind corner an exceedingly dangerous crossing, were not created by the plaintiff nor were they under his control; that while traveling Taylor street at a low rate of speed and using due care and caution for his own safety, and when one or more box or freight cars were standing on the railroad track on First avenue, and not knowing that cars were backed across Taylor street, no notice or warning to that effect having been given, plaintiff started to drive his truck across First avenue, which he honestly thought he could do in reasonable safety, but just as his

truck was about across and over the track it was struck with terrific force by a heavy freight car which defendant backed north upon another track, moving at a rapid and dangerous rate of speed for that place, under all existing circumstances, conditions and surroundings; that at this place the defendant was operating the box or freight cars backward with gross carelessness and great negligence, wantonly and recklessly, and at an excessive, dangerous rate of speed over a public street in the corporate limits of a large city, where it should have anticipated and expected the presence of people at all times, without having the cars under reasonable control, and without exercising proper care to avoid accident and injuries. It is further averred that there was no person flagging said crossing at the time of this collision, nor was any warning or signal of any kind given to the plaintiff of the approaching danger; and that as a direct and proximate result of the said reckless, negligent and unlawful acts of the defendant, its agents and servants, the plaintiff received personal injuries.

Thus the specific acts of negligence charged are: failure to give notice or warning that the train was approaching the crossing; rapid and dangerous or unreasonable rate of speed for that place; and failure to have a flagman at said crossing at the time of the collision to give warning or signal of some kind as to the approaching danger.

To this declaration defendant interposed a plea of not guilty. Under this plea defendant sought to show, and here insists, that not only was it not guilty of any negligence or violation of duty to plaintiff, but that plaintiff's injuries were the proximate result of his own negligent failure to stop, look and listen before he undertook to cross the track and thus to avoid danger of injury. The defendant insists that this is shown by the undisputed testimony and that its motion for peremptory instructions in its favor should have been sustained. There are fifteen assignments of error, all of which will be dealt with in the course of this opinion.

It was the duty of the railway company, when its train was thus backing toward the crossing, to keep a lookout, to run the train at a reasonable rate of speed, and to give timely warning of the approach of the train. The required degree of caution and circumspection was commensurate with the danger to travelers presented by the crossing, the cars obstructing vision, and the knowledge that the crossing was much frequented. This was a switching operation and this action is not based on any statutory provisions. The question as to whose negligence proximately caused the injuries must be determined by the special circumstances of this case. This was a question for the jury unless the evidence is undisputed and only one inference can reasonably be drawn from it. Roofing Co. v. Black, 129 Tenn., 30, 164 S. W., 1183, 51 L. R. A. N. S., 340.

The duty of the plaintiff, under the common law, as he came to the crossing, was a duty first to look and listen and take care for his safety, and failure to observe this duty proximately resulting in injury would be, as a matter of law, negligence on his part barring a recovery. Railway Co. v. Page, 153 Tenn., 84, 282 S. W., 376; Railroad v. Satterwhite, 112 Tenn., 185, 79 S. W., 106; Railway v. Whitlock, 136 Tenn., 266, 188 S. W., 1151; Railroad v. Parks, 136 Tenn., 367, 189 S. W., 695; Hurt v. Railroad, 140 Tenn., 623, 205 S. W., 437; Todd v. Railroad, 135 Tenn., 92, 185 S. W., 62, L. R. A., 1916E, 555; Railroad v. Ross, 2 Tenn. App., 384; Railway Co. v. Campbell, 8 Hig., 190; Steele v. R. R. Co., 153 Tenn., 208, 285 S. W., 582. This rule is subject to exceptions·where the person injured was prevented from seeing or hearing and had the use of his faculties; or where the facts relied on as creating the exception are not superinduced by the want of due care. Railroad v. Parks, Hurt v. Railroad, supra. None of these exceptions to the rule are presented in the case before us.

On the other hand, Chapter 36 of the Acts of 1917 has no bearing upon plaintiff's right to recover, for that act expressly provides that none of its provisions "shall be construed as abridging or in any way affecting the common law right of recovery of litigants in damage suits that may be pending or hereafter brought against any railroad company or other common carrier." Hines v. Partridge, 144 Tenn., 219, 231 S. W., 16.

The plaintiff admitted that when he was about fifteen feet from the track of the defendant he saw the train approaching and that he could stop his truck in about five or six feet; that this he did not do, but having started in second gear he undertook to turn and was struck by the train at an angle to the right. His opportunity to see the approaching train and his duty to avoid a collision must be considered in view of these facts and despite the presence of cars obstructing vision on both the hither tracks. It is unnecessary, therefore, to determine in this case whether or not the rule of R. R. v. Goodman, 275 U. S., 66, 72 L. Ed. 167, 56 A. L. R., 645, requiring a traveler whose view is obstructed to leave his vehicle and see that the crossing is safe, should be adopted and applied; for such a course would not be necessary when he actually saw the danger and could avoid it.

Testimony was admitted, over objection, that there were holes and rough places in the street, between and near the rails of defendant's track at the point of the accident. The plaintiff testified that in turning to the right, a left wheel of his truck was hung in one of these holes, or rough places, causing the truck to rebound toward the coming train; that it was while he was jerked to the left in that position that the train struck the truck. With reference to this condition of the street another question is made, which will hereinafter be disposed of; but the point here is that this testimony had some

bearing upon the issues of plaintiff's negligence as the proximate cause. We think that the admission of it for this purpose was not erroneous. The plaintiff was very familiar with this condition of the street. He does not say that the collision would not have occurred if the wheel had not been caught in the hole. This occurred after he saw the train and could have stopped to avoid it. In a legal sense this testimony, as relating to plaintiff's negligence, was immaterial.

The plaintiff also said that although he saw the train when he was within about fifteen feet of it he had started with such momentum that he could not avoid the collision. This was an admission that he did not have the truck under proper control or was not exercising the degree of care required of him under the circumstances. The inconsistency between this statement and his other statement that he was driving the truck at the rate of five to seven miles an hour and could stop in five or six feet is apparent. From all of these admissions the only conclusion that could reasonably be drawn is that the plaintiff was guilty of negligence; that he took the chance of getting across when common prudence required that he stop the truck and wait for the train to pass. It is, however, contended that the negligence of the operators of defendant's train was nevertheless the proximate cause of the injuries. This negligence is said to consist of acts and omissions producing the peril and of failure to avoid a casualty after the peril was discovered.

There was no real contradiction of the testimony of defendant's witnesses that the bell upon the engine was rung continuously from the time the train crossed Monroe street, a block away, until the accident occurred. The plaintiff merely gave the negative testimony that he did not hear the bell. It was admitted that no whistle was blown. When the plaintiff stopped and listened, the engine of his truck was making some noise, the ringing bell was more than nine car lengths away, and, taking plaintiff's statement as true that there were cars on the L. & N. track, his hearing was impeded by the intervention of these cars. There was testimony that the bell could have been heard three or four blocks away. There is no evidence that any other or unusual noises were being made near the crossing.

The obstructions to vision at the crossing were not placed there by the defendant, but they were apparent to its servants on the train. Obstructions to vision are not an independent ground of recovery—certainly not, in this case when the defendant did not place them—but they must be considered upon the question of the proper degree of care and vigilance which the railroad company is bound to exercise in the running and management of its train and in giving warnings of its approach. Under such circumstances the railway company must exercise such increased care and caution as the circumstances would require to prevent accidents. Railway v. Witherspoon, 112 Tenn., 128, 78 S. W., 1052.

The plaintiff said that the train was coming at a speed of about twenty miles an hour. This was contradicted by the operators of the train, who said that the speed was five or six miles an hour. On this appeal we can only look to the plaintiff's statement and disregard the others. The question whether the rate of speed was improper or unreasonable, under the circumstances, where the train was approaching a dangerous crossing, was a question for the jury. Stem v. Interurban Railway, 142 Tenn., 494, 221 S. W., 192; Railroad v. Milam, 9 Lea, 223; Railroad v. Walton, 105 Tenn., 415, 58 S. W., 736; Railroad v. Porter, 117 Tenn., 13, 94 S. W., 666; Railroad v. Wright, 133 Tenn., 74, 179 S. W., 641; Ry. v. Melvin, 5 Tenn. Apps., 85.

When the train stopped, the front car, thirty-six feet long, was beyond Taylor street and the next car was standing on the street, so that the train had gone about the length of a car and a half beyond the middle of the street when it stopped. The flagman who said he was on the stirrup or short ladder at the right front of the front car, said that the train ran a car length after the emergency brakes were applied. This would indicate that these brakes were not applied until the end of the front car was about on the other side of Taylor street. This flagman testified that the front car was about sixty feet from the crossing when he first saw the plaintiff coming in his truck; that he had been giving the engineer a steady or continual signal and that when he signaled to him to stop he stopped the train in about a car length. He said that he called to the plaintiff when he saw him coming on the track and this was not denied. From this testimony the jury could infer that the signal was not given until the collision occurred. The engineer testified that he was constantly on the lookout watching the flagman on the front of the train and that the plaintiff was forty or fifty feet away from the track when he first saw him. The operators of the train had no orders to stop the train at the crossing whether any one was approaching or not. The plaintiff testified that there was no flagman on the end car and in this he was somewhat corroborated by a negro witness who was standing on a platform forty feet away across the track, but the negro might have been unable to see the flagman, for if the flagman was there he was on an opposite side of the car. There was no flagman standing at the crossing to warn people of the approach of the train.

From this testimony the jury could infer that the defendant Railway Company was guilty of negligence. The trial judge was requested to charge the jury that the defendant did not have to give any warning or put on its brakes until the plaintiff's track became an obstacle on the track or within striking distance of the train. His refusal to give this instruction was not erroneous for it is not a correct proposition as applied to common-law negligence. It would apply only in an action based on violation of the statute Shannon's Code,

section 1574 and its subsections. If statutory precautions have been complied with, where they are required, the Railroad Company has done all those things which in legislative contemplation are necessary in the exercise of due care. It has given all proper warnings and if a person or animal nevertheless becomes an obstruction and then if everything is done that is possible to avoid a collision, the company is not liable. It is absolutely liable under the statute if it does not do these things. But in an action growing out of circumstances where the statutory requirements do not apply, the question is whether or not the Railway Company exercised that degree of care and caution that is commensurate with the circumstances, the risks involved to others. Stem v. Interurban Railway Co., supra; Railroad Co. v. Fleming, 106 Tenn., 377, 61 S. W., 58; Chattanooga Rapid Transit Co. v. Walton, supra.

To tell the jury that the defendant company did not have to do anything for the safety of the plaintiff until plaintiff's truck got on the track or in striking distance of the train would have been an inapplicable instruction, ignoring the common-law duties of the Railway Company. It would have restricted these duties to those provided by the statute, which did not apply because this was a switching operation.

Absence of the flagman at the crossing was not an independent ground of recovery, but if the crossing was one of extraordinary peril, if it was a dangerous crossing, the fact that there was no flagman was merely a matter for the jury to consider in determining whether in the particular case the Railway Company exercised ordinary care. Elliott on Railroads, 3rd Ed., vol. 3; sec. 1551 and cases there cited; 22 R. C. L., 1008; Thompson on Negligence, 2nd Ed. vol. 2, sec. 1541; Railroad v. Ives, 144 U. S., 421, 36 L. Ed., 485. In other words, as there was no requirement by statute or by ordinance that a flagman be maintained at the crossing, it was not negligence per se for the Railway Company to fail to maintain a flagman or watchman at that place. The absence of a flagman should have been considered in determining whether or not the Railway Company was negligent in maintaining the rate of speed of the train or in failing to give proper warning. In Railway Co. v. Whitlock, 136 Tenn., 266, 188 S. W., 1151, it was held that the absence of a gate or flagman at a crossing where a traveler was injured, was, if a condition of danger, a fixed one apparent to the traveler before he reached the place of peril; and he must be held to guard against it as a condition that was antecedent. Thus the absence of a gate or flagman bore materially upon contributory negligence of the plaintiff. In Railroad Co. v. Gilbert, 131 Tenn., 201, 174 S. W., 812, where a municipal ordinance required the presence of a flagman at the crossing, it was held that while the traveler was not entitled to rely solely upon the absence of such flag-

man as an indication of safety, yet the absence might have more effect to blunt the edge of caution, and therefore towards relieving the traveler from contributory negligence, and it was for the jury to say whether he was justified under all the circumstances in relying upon the flagman's absence; that is, the extent to which he was entitled so to rely and to be excused from further looking and listening was a matter for the jury. In the case before us it was for the jury to pass upon the conduct of the defendant company's train operators, and that of the plaintiff, under the circumstances.

The trial judge was requested to charge the jury that in determining whether or not the defendant was guilty of negligence in failing to have a flagman at the crossing at the time of the accident, they should look to the conditions as they existed at that hour of the day, and the fact that large numbers of workmen traveled over the crossing either on foot or in automobiles in going to their work early in the morning, would not be controlling, for the negligence charged must be attributed to the defendant, if at all, by reason of its actions and conduct at the time of the accident in question—so that they would look to the proof to ascertain the volume of traffic across the tracks at and near the time of the accident. But the proper issue was not one of negligence in failing to have a flagman at the crossing, but negligence in the operation of the train and failing to warn in view of the absence of the flagman. Of course, the volume of traffic across the tracks at and near the time of the accident should be the primary matter of consideration, rather than that at other times of the day. Now the trial judge did charge the jury that if a crossing was passed over, used and frequented by a great number of people, pedestrians and users of vehicles, then the Railroad Company in the exercise of ordinary care might be required to use a flagman at that crossing in order to warn people of the approach of its trains; that if a crossing is of a dangerous kind, and the Railroad Company in the exercise of ordinary care should provide a flagman or watchman at the crossing, and it failed to do the things that an ordinarily prudent Railroad Company should do under the existing facts and circumstances, then that Railroad Company would be guilty of negligence. But the determination of these questions was solely and exclusively with the jury. No exception has been taken to this portion of the charge. It was virtually a submission to the jury of the question whether or not a flagman should have been stationed at the crossing at that time. However, the statement that if the Railway Company failed to do the things that an ordinarily prudent railway company should do under the existing facts and circumstances, then the company would be guilty of negligence, and that was for the jury, was

correct. All that was sound law in the requests submitted was substantially embodied in these instructions actually given.

There were conflicts in the evidence as to guilt or negligence on the part of the defendant company and whether the negligence of the plaintiff or that of the defendant was the proximate cause of the injuries. The jury could infer that the servants of defendant company discovered, in time to avoid a collision, the peril into which the plaintiff had brought himself by his own carelessness and negligence. To this situation they could apply the humanitarian doctrine, or doctrine of discovered peril. 45 C. J., 987; Todd v. Railroad, 135 Tenn., 92, 185 S. W., 62, L. R. A. 1916E, 555. The jury could infer that the acts of negligence of the defendant were subsequent to those of the plaintiff and therefore the rule as to concurring negligence of the defendant were subsequent to those of the plaintiff and therefore the rule as to concurring negligence would not apply, the negligence of defendant being deemed the proximate cause of the injuries.

It results therefore that the trial judge did not err in declining to give peremptory instructions for the defendant and that there is material evidence to support the verdict of the jury.

The trial judge was requested to instruct the jury as follows:

"T charge you that liability cannot be predicated upon the rate of speed alone and therefore before you can find for plaintiff upon the issue of the speed of the train you must go further and find that said crossing was a dangerous one, and it is only then that you can consider the question of speed—that is, you must consider it in connection with the character of the crossing or not at all, under these pleadings."

Under the authorities already cited this request embodied a correct and material proposition. The declaration contained an averment that the train was being run at a excessive and dangerous rate of speed. This was one of the acts of negligence relied upon. Speed was not an independent ground of recovery but it was necessary further for the jury to find that the crossing was dangerous in order that the rate of speed could be considered in determining as to the exercise of the required amount of care. The plaintiff testified that the train was being run at the rate of about twenty miles an hour. The instructions given by the trial judge contained no statement as to how the rate of speed of the train should be considered. The jury were left to infer that the mere operation of the train at that rate of speed would constitute negligence. The jury should have been instructed that only with reference to the nature and condition of the crossing should they determine whether or not it was dangerous to operate the train at whatever speed they should find it was operated. We are therefore of the opinion that the defendant was entitled to have these instructions given to the jury.

The trial judge charged the jury as follows:

"Also gentlemen, where a Railroad Company crosses a public highway it would be the duty of the Railroad Company in the exercise of ordinary care to maintain the road bed within its cross ties in a reasonably safe condition for travel."

In the latter part of his charge, His Honor, recurring to this instruction, further charged the jury as follows:

"Gentlemen, I stated to you in this charge that it was the duty of the Railroad Company to keep the street in a reasonably safe condition for travel within its cross ties. That is the duty of the Railroad Company but because they did that or because they did not do that, that within itself would not render the Railroad Company liable necessarily for resulting injuries. It is just a fact and circumstance that you can look to, as to whether or not the street was in a good or bad condition within their tracks in considering as to the things that the plaintiff did in the progress and movement of his car at the time of the alleged accident."

It was manifestly urged at the trial, as it is insisted in support of the judgment, that the defendant Railway Company had violated a duty by failing to maintain the road bed at the crossing in a reasonably safe condition for travel. The plaintiff gave as a cause of his inability to extricate himself from the peril, that the wheel of his truck was hung in a hole in the street at the crossing, and the inference might be that but for this hole he could and would have avoided the injury. Of course it was not improper to say to the jury that this could be looked to in determining whether or not the plaintiff's conduct was negligent, resulting proximately in the injury; but these instructions must have left the jury to consider a violation of duty on the part of the Railway Company in failing to maintain the street at the crossing as actionable negligence. We do not fully understand the import of the expression, "that within itself would not render the Railroad Company liable necessarily for resulting injuries." Certainly the jury were not told definitely, in this language, whether the Railroad Company would or would not be liable. But above all of this is the fact that the failure to maintain the crossing in a reasonable manner, if it was the duty of the Railway Company, was not an act of negligence charged in the declaration and was wholly outside the scope of the pleadings. In the first count of the declaration there is the general averment that the defendant through its agents and employees carelessly and negligently and without notice or warning, backed a train of box or freight cars into, upon and against the plaintiff seriously injuring him. There are no other averments more specifically setting forth acts of negligence. In Railroad Co. v. Pratt, 85 Tenn., 9, 1 S. W., 618, it was held that a general averment of negligence was sufficient to let in evidence of any statutory negligence of which the railroad might have been guilty in running over the

plaintiff; but this case is not grounded upon any statutory negligence.

In the second count of the declaration specific acts of negligence are charged, and the failure to maintain the street crossing is not one of them. It is well settled that an action cannot generally be maintained by evidence of acts of negligence which are not averred in the declaration, or upon evidence of a specific act different from that alleged in the declaration. Coal Co. v. Daniel, 100 Tenn., 65, 42 S. W., 1062; Fletcher v. Railroad, 102 Tenn., 1, 49 S. W., 739; Railroad v. Berry, 118 Tenn., 581, 102 S. W., 85; Railroad Co. v. Lindamood, 111 Tenn., 457, 78 S. W., 99; Moore & McFerrin v. Fletcher, 145 Tenn., 102, 236 S. W., 924; 2 Tenn. Apps., 423. It was therefore erroneous to give these instructions to the jury. They were not mere abstractions because they tended to give effect to evidence as to the condition of the street, which was admissible only as bearing upon the plaintiff's negligence.

The defendant's counsel submitted two requests, that the court charge the jury that there was no proof that it was the duty of the defendant company to repair or maintain the street; that as plaintiff did not in his declaration allege as a ground of negligence that the defendant company was charged with the duty of keeping the street at the place of the crossing in good repair, that it had breached its duty in that regard because it had not kept said crossing in good repair; as it was not alleged in the declaration that the bad condition of the crossing was the proximate cause of the plaintiff's injuries, the jury could not look to such contention of the plaintiff or base a verdict thereon.

In our opinion, for the reasons given, the defendant company was entitled to have these instructions given to the jury as requested. They embodied correct rules which should have been set forth in connection with the statement actually given that the condition of the street within the tracks might be considered upon the question of plaintiff's negligence as the proximate cause of his injuries. All of this is true, in our opinion, without considering what was the legal duty of the defendant company as to maintaining the street at the crossing. It was simply an issue not comprehended within the pleadings but improperly injected into the case in the testimony and improperly made the subject of instruction by the trial judge. We therefore do not feel it incumbent upon us to pass upon this latter question.

The defendant company offered to prove by two witnesses that they had warned the plaintiff two or three times about driving over this crossing without stopping, and at a fast rate of speed, and had also spoken to plaintiff's employer about plaintiffs continuing in so doing, and that one of them had seen the plaintiff drive over said crossing several times prior to the accident at a fast rate of speed and without

stopping his truck before crossing the tracks. The trial judge in our opinion committed no error in excluding this testimony. If it were competent to show merely that plaintiff had been warned of the peril, and this was all sought to be shown by the proffered testimony, the exclusion of it would not be reversible error, because it appears abundantly in this record that plaintiff was thoroughly familiar with the crossing, having had long experience in going over it, and he knew all about the danger involved in crossing it at any unreasonable rate of speed, or without taking proper precautions. But this testimony would have been also evidence of other like acts committed by plaintiff, and such evidence is not admissible because it relates to collateral facts or those which are incapable of affording any reasonable presumption or inference as to the particular fact or matter in dispute, that is, the plaintiff's conduct at the time in question. 10 R. C. L., 937; Railroad v. McClish, 115 Fed. Rep., 268; Franklin v. Franklin, 90 Tenn., 43, 16 S. W., 557; D. & L. Railroad Co. v. Converse, 139 U. S., 469, 35 L. Ed., 213; Railroad Co. v. Thomas (Okla.), 164 Pac., 120; L. R. A. 1917E, 405; Flynn v. Lewis, 231 Mass., 550, 121 N. E., 493, 2 A. L. R., 896.

It results that assignments of error numbered 4, 5, 6, 7 and 12 are sustained. All of the other assignments of error are overruled, with the exception of the assignment that the verdict and judgment based thereon are excessive, indicating passion, caprice, and prejudice on the part of the jury, will not be passed upon as the cause will be remanded for a new trial. The judgment of the circuit court is reversed, the verdict set aside and the cause will be remanded for a new trial. The costs of the appeal will be adjudged against the defendant in error. The costs in the court below will abide the final result.

Faw, P. J., and Crownover, J., concur.