# ROBERT PAGE v. TENNESSEE CENTRAL RAILWAY COMPANY. —305 S. W. (2d) 263.

Middle Section. December 21, 1956.

Petition for Certiorari denied by Supreme Court, May 3, 1957.

John J. Hooker, Nashville, Daniel Seay, Jr., Louis Chambers, Lebanon, for plaintiff in error.

William D. Baird, Lebanon, Carmack Cochran, Nashville, for defendant in error.

I

SHRIVER, J.  Robert Page sued the defendant, Tennessee Central Railway Company, for $10,000 damages for personal injuries incurred by him when struck on or near the tracks of the defendant within the corporate limits of the City of Lebanon, Tenn.

The declaration is in three counts but it is only on the second count charging a violation of subsection four of section 65-1208, T. C. A., on which the plaintiff relies here.

The defendant filed a plea of the general issue and, at the conclusion of all the evidence, the Court sustained the defendant's motion for a directed verdict.

In due season the plaintiff filed his motion for a new trial assigning as a single ground that the Court erred in sustaining the defendant's motion for a directed verdict.

The motion for a new trial was overruled and an appeal in error was perfected to this Court.

## II

## Assignment of Error

The only assignment of error is that the Court erred in sustaining the defendant's motion for a directed verdict made at the conclusion of all the evidence.

The plaintiff further narrows his insistence in the following language,

"The plaintiff's insistence is that actually the defendant did not have the engineer or fireman properly on the lookout ahead. There is no particular conflict in the evidence about the alarm whistle having been sounded and the brakes having been put down after the plaintiff was seen as an obstruction on or near the track. The real dispute in the evidence arises from the fact that neither the engineer nor the fireman (the regular engineer riding in the fireman's position) saw the plaintiff's body lying in close proximity to the rail of the defendant's track so as to create an obstruction as promptly as he should have been seen by the exercise of the 'utmost vigilance, the greatest possible care and diligence' required of the defendant."

## III

## The Facts

This accident happened on Saturday, August 28, 1954, at some time between 11:30 P. M. and midnight at a point within the city limits of the Town of Lebanon, Tennessee, on the right-of-way of Tennessee Central Railway Company between South College and South Cumberland Streets.

Defendant's train, consisting of two diesel engines on the front and about fifty freight cars and a caboose attached thereto, was proceeding westwardly towards the station in Lebanon where it was going to stop, and it was traveling at about 12 miles per hour as it approached the scene of the accident.

The track east of South College Street toward Monterey is straight. After the track crosses South College Street, going in a westerly direction toward Cumberland Street, there is a curve to the right.

The degree of the curve is shown by photographs made exhibit by both parties.

The right-of-way almost up to the edge of the ties at the scene of the accident was covered with bushes, shrubs and high grass.

On a clear day, by looking across the curve, an object such as a man's body, at the point where the accident occurred, can be seen from a distance of about 215 steps east of that point.

At night, due to the curvature of the track, a man's body lying at the point where the accident occurred, would not come within the range of the headlight on the front of the diesel engine of defendant as it approached that point from the east, until the front of the engine was within 100 to 125 feet of such point.

The plaintiff, Robert Page, a Negro man employed at Cumberland University, was what is known as a "drinking man" by his own admission as well as by the testimony of witnesses.

On the Saturday afternoon in question, plaintiff spent some hours in a place known as the Town Pump, where he had some three glasses of beer. Afterwards he went to his home, and later returned to the Town Pump where he drank an additional quantity of beer. He left this place about 10:30 P.M., and took a roundabout way to his home, going by Scurlock's store, located near where the Tennessee Central Railway crosses South College Street.

Plaintiff left Scurlock's Store about 11:30 P.M., and had about $11.50 in his pocket. As he left this store he started walking along the south side of the right-of-way of defendant Railway Company. When he had gone about 50 or 75 feet, something,—not a train,—struck him about the head. He knows nothing about what happened from that time until he was awakened by the pain when his foot was injured in the accident. When he did become conscious his $11.50 had disappeared.

The train of defendant, which was involved in the accident with the plaintiff, was a regular train passing through Lebanon on its way to Nashville at about the same time each night.

On the type of diesel engine here involved, the cab is at the front of the engine. There is a window in front of the fireman's seat, which is on the left side, and a window in front of the engineer's seat, which is on the right side.

Before entering the city limits of Lebanon, the automatic bell had been turned on and was ringing continuously from the time the train entered the city limits before reaching South College Street, until after the accident occurred.

As the train reached the crossings before the South College Street crossing the regular street crossing whistles were blown, and, as the train approached the South College Street crossing, there was the usual blowing of the whistle which ceased just a few feet before the front engine entered the crossing.

The fireman and engineer had changed places at Carthage Junction, which was a customary procedure, the fireman having been a qualified engineer since 1947.

The acting engineer was on the right side of the front engine, looking out ahead on his side. The acting fireman was on the left side of the front engine looking out ahead on his side. Both the engineer and fireman were on the lookout ahead before the train reached the South College Street crossing and at all times from that point until after the accident happened.

The headlight on the engine is stationary, and, on a straight track, would disclose an obstruction on or near the tracks about 600 feet in front of the engine. On a curve, however, the light would not disclose an obstruction such as a man, until the engine turned with the curve so that the light would pick up the object.

As the engine crossed over South College Street, the headlight, by virtue of the fact that the track was straight at that point, was shining directly into the door of a large brick building on the south side of the track shown in photographs, defendant's Exhibits 1, 2, 3 and 4. At that point the headlight on the engine did not disclose plaintiff lying beside the track because of the curve, the light pointing straight ahead while the track curved to the right.

As above stated, the point where the plaintiff was lying beside the track was a little more than 200 feet west of the west side of South College Street crossing.

When the front of the engine was some 100 to 125 feet from the place where the plaintiff was lying, that is, when the engine had traveled 75 to 100 feet from the South College Street crossing, the headlight picked up an object, later identified as the plaintiff, on the south side of the track with his head on a tie about 18 inches from the south rail and his body perpendicular to the track. His feet and legs were hidden by the bushes and shrubs beside the track.

The acting engineer saw the object as soon as the headlight beam picked it up, when the engine was about 100 to 125 feet away. He recognized that the object was so near the sweep of the train that it might be an obstruction. He immediately applied the emergency brakes, and at the same time, began sounding the alarm whistle. The automatic bell was ringing. He continued to sound the whistle until after the train had passed the point where the plaintiff was lying.

At about the same time the acting engineer saw the object and applied the emergency brakes and began blowing the whistle, the acting fireman also saw the same object and gave the signal to stop by calling ''That will do'' which, in railroad parlance, means ''Stop immediately''.

When last seen by both the fireman and engineer the plaintiff had not moved. The fireman saw the plaintiff from the time the headlight rays fell upon him until the engine was about 10 or 12 feet from plaintiff, the front

of the engine then obstructing his view, and, at that time, the plaintiff had not moved.

The front of the forward engine stopped approximately 260 feet west of the point where the plaintiff was lying at the time the accident occurred.

The train crewmen got off the train and went back to the plaintiff, who was then conscious, having been aroused from his unconscious condition by the pain in his foot. They found him sitting in an upright position, about 7 or 8 feet from the track. He had suffered the loss of the toes of his right foot, which were found inside the south rail, and his shoe had been torn off that foot.

An examination subsequent to the accident disclosed no mark of any kind on either engine at the front or side with the exception of a spot of blood at the brake step of the second engine on the side where the plaintiff was lying, which spot of blood was more than 50 feet back of the front end of the front engine.

The plaintiff was removed from the scene of the accident to a hospital in an ambulance called by a member of the train crew.

## IV

The applicable statute requires the utmost vigilance, the greatest possible care and diligence, and the use of every means, on the part of the Railroad Company and its agents to prevent injury to person and property. See Memphis & C. R. Co. v. Dean, 37 Tenn. 291 and Chattanooga Rapid Trans. Co. v. Walton, 105 Tenn. 415, 58 S. W. 737, and many other cases announcing the above rule.

Under the foregoing facts, can it be said that the defendant Railroad Company, through its agents, failed in any legal duty which it owed to the plaintiff.

It is insisted by learned counsel for plaintiff that, since it is admitted that the train was only 100 to 125 feet away when the engineer and fireman first saw the plaintiff, one must conclude that they were not keeping a proper lookout ahead. It is said that this is particularly true since it is also admitted that one can see five or six hundred feet straight down the tracks with the headlights burning on an engine such as the one involved here.

It is also insisted by counsel for plaintiff that the several photographs introduced as exhibits, show that the headlight on the engine, as it rounded the curve, must have shown directly on the plaintiff as he lay near the left side of the track, before he was actually seen by the engineer and fireman. Hence, it is argued, this was a case for the jury.

Section 65-1208(4), T. C. A., provides:

"Every railroad company shall keep the engineer, fireman, or some other person upon the locomotive, always upon the lookout ahead; and when any person, animal, or other obstruction appears upon the road, the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident."
Section 65-1210, T. C. A., provides:

"No railroad company that observes, or causes to be observed, these precautions shall be responsible for any damage done to person or property on its

road. The burden of proof that it has observed said precautions shall be upon the company.''

In the case of Cincinnati N. & T. P. Railway Co. v. Wright, 133 Tenn. 74, 179 S. W. 641, in construing the above statute the Supreme Court held;

"Under Shannon's Code, sec. 1574, providing that every railroad company shall keep the engineer, fireman, or some other person upon the locomotive always upon the 'lookout ahead,' enginemen are not required, when on a curve, to look across the intervening space to the further end of the curve, thereby withdrawing the lookout from the track immediately ahead of the engine.''

It seems to us that all the evidence in this case shows that the engineer and fireman were on the lookout at and before the time of the accident, and that the precautions required by statute were observed by these men. That is to say, the whistle was blown, the brakes were applied, the bell was rung, and all other precautions required by the statute were taken as the engine approached the scene of the accident.

All the evidence further supports the proposition insisted on by the defendant that the lights on the locomotive did not pick up or disclose the presence of the plaintiff near the tracks until the engine was within 100 to 125 feet of him.

There is no insistence here that the defendant company was negligent in failing to provide a light with a wider beam than the one with which the engine was equipped, or that the brakes or other appliances on the locomotive were defective, or failed to function properly. It is

simply said that the engineer and fireman should have seen the plaintiff sooner than they did and that their failure to see him demonstrated that they did not keep a proper lookout ahead.

We think all the evidence in the record is to the effect that they were keeping a proper lookout ahead, that, as hereinabove stated, they observed all the statutory precautions and that the lights on the engine did not show the presence of the plaintiff near the tracks until the engine was within a 100 or 125 feet of him and too late for the train to be stopped before reaching him.

Under the authority of Cincinnati N. O. & T. P. Ry. Co. v. Wright, supra, the engineer and fireman were not required to do anything more or other than they did with respect to seeing the plaintiff around the curve of the track.

It results that the assignment of error is overruled and the judgment of the trial Court affirmed.

Affirmed.

Felts and Hickerson, JJ., concur.