IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 1, 2010

# PROVIDENCE CROSSINGS, LLC v. SC REALTY CAPITAL, L.P., SC CAPITAL, LLC, AND SMITH REALTY INTERESTS, L.P.

**Appeal from the Chancery Court for Davidson County**
**No. 06-364-II     Ellen H. Lyle, Chancellor**

---

**No. M2009-01307-COA-R3-CV - Filed November 2, 2010**

---

Purchaser of landlocked property brought action against the sellers, seeking to recover damages allegedly caused by the failure of the sellers to complete a road extension or otherwise to insure reasonable access to the property, which had been purchased for development of multi-family rental units. The trial court granted summary judgment to the sellers, finding that the right of the purchaser to proceed with the action was extinguished when the bank that provided financing for the development of the property foreclosed on the loan secured by the property and subsequently sold the property to another entity. The court concluded that the purchaser did not have standing to pursue the claims. Finding that a genuine issue of material fact exists as to whether the purchaser's cause of action was included in the assets foreclosed upon, we reverse the judgment of the trial court and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed;**
**Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S. joined. FRANK G. CLEMENT, JR., J., filed a concurring opinion.

Gregory H. Oakley, Nashville, Tennessee, for the appellant, Providence Crossings, LLC.

Patricia R. Young, Brentwood, Tennessee, for the appellees, SC Realty Capital, L.P., SC Capital, LLC, and Smith Realty Interests, L.P.

## OPINION

Providence Crossings, LLC, ("Providence") seeks reversal of the grant of summary judgment to SC Realty Capital, L.P., SC Capital, LLC, and Smith Realty Interests, LP ("the

SC Group") in Providence's action to recover for the failure of the SC Group to complete a road extension, which would have given property purchased by Providence for residential development access to an existing public road. Providence contends that there is a genuine issue of material fact as to whether Providence's contract causes of action were acquired by Bank of America following foreclosure on the loan and, consequently, summary judgment was improper. The SC Group articulates the issue before us as "whether upon the default of [Providence] on the Bank of America loan, that the lender became the holder of all contract rights, which were subsequently sold by Bank of America following foreclosure on the [Providence] loan."

## I. Factual and Procedural History[1]

On February 24, 2004, Providence Group, Inc., entered into a Commercial Division Real Estate Contract ("the Contract") with SC Realty Capital, L.P. to purchase twenty-five acres of land in Davidson County for the purpose of developing and constructing 180 multi-family rental units. Among the conditions and contingencies in the Contract was an agreement by the seller to build a road which would connect the property being purchased to a public road. On May 25, SC Realty Capital, L.P. assigned and transferred its rights in the Contract in varying percentages to the members of the SC Group. On August 13 Providence Group, Inc., assigned its right, title, and interest in the Contract (as then amended) to Providence Crossings, LLC.

The road extension was not constructed and, according to the affidavit of M.T. Person, III, as a result of not completing the road, tax credits were lost and the primary equity investor withdrew funding for the project.[2] Providence also defaulted on its obligations to Bank of America. As the project came to a halt, various suppliers and subcontractors initiated suits to have liens declared and enforced. The first of the lien actions was filed in

---

[1] This appeal originated in a suit brought by Four Point Concrete, Co., Inc., to have a mechanic's and materialman's lien declared and enforced for labor and materials supplied to the development. Subsequent cases also seeking to declare and enforce liens were filed and consolidated with the Four Point Concrete suit. As noted by counsel for the SC Group, the case has grown and presently "is convoluted from the many claims of many parties." We have endeavored to include only the facts and procedural history of the case that are germane to the issues presented in this appeal.

[2] According to his affidavit, Mr. Person is the "Managing Member of Providence Crossings Managing Member, Inc., which is the Managing Member of Providence Crossings, LLC." The affidavit of Mr. Person was filed in support of Providence's motion for partial summary judgment, which was not ruled upon by the trial court. The facts taken from Mr. Person's affidavit are mentioned herein for background purposes and are not material to the disposition of the summary judgment serving as the basis of this appeal. By including these facts as part of the procedural history of this appeal, we do not preclude the parties from contesting these facts or relieve any party from the burden of proving them in later proceedings.

Part III of Davidson County Chancery Court on February 10, 2006. Two other cases were filed shortly thereafter in other parts of the Chancery Court; they were subsequently transferred to Part III where they were consolidated by order entered June 15, 2006.

On August 10, 2006, Providence filed a third party complaint against the SC Group and CPI-Realty, L.P., seeking damages for alleged breach of the agreement to construct or cause the construction of the road extension. The complaint alleged that "through the acts or omissions of the Third Party Defendants that the road extension was never built and as a direct and proximate result the construction project totally failed with vast negative effects."

On October 17, 2006, Bank of America filed a third party complaint against SC Realty Capital, L.P., SC Capital, LLC, CPI-Realty, L.P., Crowe Property Interests, Inc., Smith Realty Interests, LP, Smith Investment Corporation, Crews Investment Properties of Tennessee, L.L.C., Providence Crossings, LLC, The Providence Group, Inc., and M.T. Person, III, seeking to enforce the contractual obligation to complete the road extension. Of particular relevance to this appeal are the following allegations from Bank of America complaint:

> 36. All rights in the Property were conveyed by Providence Crossings, LLC under the First Deed of Trust and the Second Deed of Trust. The sole beneficiary of the First Deed of Trust and the Second Deed of Trust is Bank of America. As such, Bank of America has rights superior to the rights of Providence Crossings, LLC to assert claims against the Smith-Crowe Defendants[3] under the Commercial Division Real Estate Sales Contract, as amended, and against Crews under the Agreement and Grant [4] for failure to build the extension of Crossings Circle to the Property.

On November 20, 2008, the Crews defendants[5] filed a motion for summary judgment supported by the affidavit of Ms. Bettie Van Tilburg, Senior Vice President of Bank of

---

[3] SC Realty, SC Capital, CPI-Realty, Crowe Property Investments, Inc., Smith Realty and Smith Investment Corporation are referred to as the "Smith-Crowe Defendants" in Bank of America's complaint.

[4] Crews Investment Properties of Tennessee, LLC, ("Crews") was named as a Third Party Defendant in Bank of America's Third Party Complaint. Bank of America alleged that on June 1, 2004, Crews entered into an "Agreement and Grant" with SC Capital, CPI-Realty and Smith Realty whereby Crews would build the road extension; that on October 8, 2004, the Agreement and Grant was assigned to Providence; and that Crews defaulted on the Agreement and Grant by failing to build the road extension.

[5] The defendants filing the motion were Crews Investment Properties of Tennessee, L.P., Crews Crossings, LLC, and Mike Slattery.

America, and various documents relating to the financing Bank of America provided to Providence. The movants contended that any right Providence had to pursue an action to recover for the alleged breach of the agreement to construct the road extension was subject to Bank of America's "valid, all-encompassing blanket security interest." They further contended that Bank of America had foreclosed on its security interest, bought the assets of Providence at the foreclosure and UCC sale and sold those assets to movants; consequently, Providence had no legal right to maintain the action. On November 25, the SC Group joined in the motion for summary judgment asserting that it was "in an identical position" as the Crews defendants.[6]

Providence filed a response to the summary judgment motion, along with a response to the movants' statement of uncontested facts and its own Statement of Material Facts in Dispute. Providence contended that the tort claims it asserted against Crews and the SC Group were "future tort claims" which "cannot be the subject of a security interest, were not adequately described in the Financing Statement, and were not assignable as a matter of law." Providence further contended that the contract claims, while assignable, were not included in the property pledged as collateral for Bank of America's financing.

The trial court granted summary judgment to the SC Group, holding that Providence's right to proceed with the action was extinguished by Bank of America's foreclosure of the loan and the resulting sale of the collateral; as a consequence, Providence lacked standing to bring the suit.

## II. Discussion

This appeal is from a grant of summary judgment. Summary judgment is appropriate only if the "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008) (quoting Tenn. R. Civ. P. 56.04). Since our review concerns questions of law, we review the record *de novo* with no presumption of correctness. *See* Tenn. R. App. P. 13(d); *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). We take the strongest view of the evidence in favor of the nonmoving party, allowing all reasonable

---

[6] The sole basis on which summary judgment was sought and granted was set forth in the Crews defendants' motion, which was joined in by the SC Group. On appeal, the SC Group additionally asserts that no cause of action existed against it at the time of the foreclosure because it was not a party to the contract alleged to have been breached. This contention was not presented to the trial court and is not presented to us for resolution as a separate issue; consequently, unless otherwise expressly stated, we make no determination of the rights of the parties under any of the instruments after foreclosure.

inferences in its favor and discarding all countervailing evidence. *See Shadrick v. Coker*, 963 S.W.2d 726, 731 (Tenn. 1998) (citing *Byrd v. Hall*, 847 S.W.2d 208, 210–11 (Tenn. 1993)).

When making a motion for summary judgment, the movant has the burden of either: (1) affirmatively negating an essential element of the nonmoving party's claim; or (2) showing that the nonmoving party cannot prove an essential element of the claim at trial." *Id*. (citing *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008)). If the movant meets its burden, then the nonmoving party "is required to produce evidence of specific facts establishing that genuine issues of material fact exist." *Martin*, 271 S.W.3d at 84 (citing *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)).

Movants relied on the affidavit of Ms. Bettie Van Tilburg, Senior Vice President of Bank of America, and various of the Providence loan documents to support their contention that any right of Providence to pursue an action had been extinguished by Bank of America's foreclosure on its security interest and subsequent sale of the assets securing the loan. While Providence does not dispute its obligations to Bank of America, as contained in the Deed of Trust and Financing Statement, it does contest the statements in Ms. Tilburg's affidavit that she "has firsthand knowledge" of the matters stated in her affidavit, *viz.*, the disposition of the UCC assets at the foreclosure sale. Specifically, Providence contends that, since the affidavit does not detail how Ms. Tilburg acquired the knowledge of facts stated in the affidavit, the affidavit is insufficient to support the summary judgment motion.

Tenn. R. Civ. P. 56.06 requires that affidavits filed with reference to summary judgment motions be made on personal knowledge, affirmatively show that the affiant is competent to testify to the matters contained in the affidavit, and set forth facts as would be admissible at trial. Ms. Tilburg's affidavit sets forth that she is a Vice President of Bank of America, is familiar with the obligations of Providence to the Bank, and that Providence defaulted on the loan. Documents related to Providence's obligation to Bank of America are attached as exhibits, including the Deed of Trust and UCC Financing Statement, a substitute trustee's deed conveying the real property to Bank of America after the foreclosure sale, a warranty deed conveying the real property from Bank of America to Crews Crossings, LLC, and a Bill of Sale and Assignment conveying assets from Bank of America to Crews Crossings, LLC. The affidavit was sufficient to place the documents into the record. Indeed, Providence acknowledges in its Brief that its obligations were "undisputed and are set forth in the Deed of Trust and Financing Statement."

To the extent, however, that the trial court relied on Ms. Tilberg's statements to conclude that the cause of action was foreclosed upon, such reliance was misplaced. The affidavit speaks of "the assets and collateral sold at the sale" but does not identify those assets and collateral. As more fully set forth hereinafter, there is a genuine issue of material

fact as to whether the cause of action was, in fact, conveyed to the Bank at the foreclosure sale.

The SC Group contends that the exhibits demonstrate that any right Providence had to proceed with the suit seeking to recover for the failure to build the road extension was part of the UCC collateral that was foreclosed upon and sold to Crews Crossings, LLC. In this regard, the schedule of property in the UCC Financing Statement includes the following:

> (k) All rights to the payment of money, whether now or later to be received from third parties, . . . contract rights, . . . general intangibles, . . . which arise from or relate to construction on the Land, or to any business now or later to be conducted on it, or to the Land and Improvements generally, together with
> (l) . . . all causes of action and their proceeds for any damage or injury to, or defect in, the Land, the Improvements, . . . or breach of warranty in connection with the construction of the Improvements, including causes of action arising in tort, contract, fraud, misrepresentation, or concealment of a material fact. . . .[7]

The Notice of Foreclosure set October 9, 2007 as the date for the sale of the real property and "a sale under the Uniform Commercial Code of all the right, title and interest to all of the personal property, general intangibles and other collateral, . . . the ownership interest in said personal property being held by Providence Crossings, LLC." At the sale, Bank of America was the successful bidder and the trustee conveyed the real property to the Bank for the stated consideration of $1,000,000.00.[8] The Bank then conveyed the real property to Crews Crossings, LLC, by special warranty deed, the conveyance being subject to, *inter alia*, the Agreement and Grant referenced in footnote 4, *supra*; this conveyance was dated October 30, 2007 and listed $1,500,000.00 as the consideration paid. Nearly a year later, on October 7, 2008, Ms. Van Tilburg executed a Bill of Sale and Assignment,

---

[7] In its response to Defendants' Statement of Uncontested Facts, Providence states with regard to the quoted language: "Undisputed that these are true and correct excerpts from the Financing Statement."

[8] The trustee's deed stated that the trustee:

acknowledge[d] the credit in the amount of One Million Dollars ($1,000,000.00) against the indebtedness evidenced by the Letter of Credit Reimbursement Agreement which was the highest bid, and for and in consideration of said bid . . . does hereby transfer and convey . . . the following described real estate . . . .

quitclaiming the assets secured by the UCC Financing Statement to Crews Crossings, LLC.

The materials filed by movants called into question whether Providence had a legal right to prosecute the action, an essential element of going forward, thereby shifting the burden to Providence to establish a factual dispute as to its right to proceed. *Martin*, 271 S.W.3d at 83. Providence could do this by, *inter alia*, pointing to evidence establishing material factual disputes that were overlooked or ignored or producing additional evidence establishing the existence of a genuine issue for trial. *Id.*

Providence disputed the fact that the cause of action was sold at the foreclosure. In its Response to Defendants' Statement of Uncontested Facts, Providence stated the following:

> 5. On October 9, 2007, BoA foreclosed on the Property and conducted a UCC sale of the other assets and collateral. (Affidavit of Van Tilburg).
>
> RESPONSE: Disputed. Van Tilburg's affidavit is inadmissible on this issue because there is no evidence that Van Tilburg was at the foreclosure sale or that he [sic] otherwise has personal knowledge of what happened at the foreclosure sale. Furthermore, there is no documentary evidence that other assets and collateral were actually sold at the foreclosure sale. BoA did not prepare a transfer statement and there is no document conveying the other assets and collateral to BoA. Also, according to the Substitute Trustee's Deed, BoA bid $1,000,000 at the sale, and paid $1,000,000 (in the form of a credit) for the real property only. (Substitute Trustee's Deed). Also, BoA had taken possession of the contract claims and had asserted them in its Third-Party Complaint. (See Third-party Complaint, attached as <u>Exhibit 6</u> to Plaintiff's response [to] Motion for Summary Judgment). These claims were still pending at the time of the foreclosure sale. BoA subsequently dismissed them on August 1, 2008, which is further evidence that BoA believed that it still owned the claims.
>
> 6. BoA bought the collateral at the sale. (Affidavit of Van Tilburg).
>
> RESPONSE: Disputed. See Response to Statement No. 5
>
> 7. Crews Crossings, LLC, bought the Property and the other collateral from BoA. (Affidavit of Van Tilburg).
>
> RESPONSE: Disputed. See Response to Statement No. 5

In further response to the motion for summary judgment, Providence filed its own Statement of Material Facts in Dispute, with attached exhibits, along with a second affidavit of M. T. Person, III.[9] Providence's statement includes the following:

6. On June 1, 2004, SC Capital, CPI Realty, and Smith Realty entered into an agreement titled Agreement and Grant with Crews Investment Properties of Tennessee, LLC, whereby Crews Investment Properties promised to build the road extension of Crossings Circle across the adjacent property. This agreement is attached as Exhibit 3.

7. The Real property is not mentioned in the Agreement and Grant. (See Exhibit 3).

***

12. In the Fall of 2006, approximately one year before the foreclosure sale, BoA filed a Third Party Complaint against the SC Defendants, Crews Investment Properties of Tennessee, LLC, Providence Crossings and Tom Person. (See Third-Party Complaint, attached as Exhibit 6).

***

14. BoA asserted Providence Crossings' breach of contract claims against the SC Defendants and Crews Investments arising from the failure to construct the Road. (Third-Party Complaint, Exhibit 6. ¶ 37).

15. BoA sought specific performance or monetary damages against the SC defendants and Crews Investments and also asked the Court to rule that "Bank of America's rights against the Smith-Crowe Defendants and Crews are superior to the rights of Providence Group, LLC, the Providence Group, Inc. and M.T. Person, III against those defendants." (Third-Party Complaint, Exhibit 6, Prayer for Relief, ¶¶ 2, 3).

16. BoA's Foreclosure Notice provides that concurrent with the sale of the Real Property, BoA was to conduct a sale under the Uniform Commercial Code of all of the property described in the Financing Statement on record with the Arkansas Secretary of State. (Notice of Foreclosure Sale, attached as Exhibit 7, p. 4). It is this property that Crews and SC contend contains the claims asserted by Providence Crossing in this action. (See Crews' Memorandum in Support of Motion for Summary Judgment, p. 3).

17. The foreclosure sale was conducted by BoA's attorney on October 9, 2007, (Substitute Trustee's Deed, attached as Exhibit 8, p. 2).

18. BoA made a credit bid of $1,000,000 at the foreclosure sale. (Id.).

---

[9] Mr. Person's first affidavit had been filed in support of Providence's Motion for Partial Summary Judgment.

19. On October 8, 2007, BoA recorded a Substitute Trustee's Deed. The Substitute Trustee's Deed conveys the Real Property but makes absolutely no mention of the other collateral, including any chooses [sic] in action. (See Exhibit 8).

20. As set forth under oath in the Substitute Trustee's Deed, the consideration for the Real Property was $1,000,000. (Exhibit 8, p. 1).

21. Crews has not presented any document contemporaneous with the foreclosure sale or the Substitute Trustee's Deed purporting to convey any collateral other than the Real Property.

22. Crews has not presented any document purporting to convey any collateral other than the Real Property to BoA at any time.

23. There is no evidence in the record to demonstrate that Van Tilburg was present at the foreclosure sale or has any personal knowledge about what occurred at the foreclosure sale.

24. Based on the evidence in the record, BoA only gave Providence Crossings a credit of $1,000,000 from the foreclosure sale. (Substitute Trustee's Deed, p. 2).

25. On October 30, 2007, BoA sold the Real Property to Crews Crossings, LLC for $1,500,000. The conveyance was accomplished by a Special Warranty Deed. (Special Warranty Deed, attached as Exhibit 9).

26. There is no conveyance or mention of any property other then [sic] the Real Property in the Special Warranty Deed. (Id).

*  *  *

29. On October 7, 2008, almost a year after the foreclosure sale and several months after Providence's claims against Crews had been filed, BoA "quitclaimed" the collateral described in the Financing Statement to Crews Crossings, LLC. (See Bill of Sale and Assignment (the "Bill of Sale"), attached as Exhibit 11).

30. There is no consideration mentioned in the Bill of Sale or anywhere else in the documents that have been filed by Crews.

There are no responses to Providence's Statement of Material Fact in the record.

Providence asserts that the lack of a bill of sale or other evidence that the assets secured by the UCC filing were conveyed to Bank of America establishes a genuine issue of material fact as to what, if anything, was sold at the foreclosure sale. At most, Providence argues further, the lack of documentation shows that there was, in fact, no foreclosure under the UCC financing statement.

There is no documentation that Bank of America received any assets other than the real property, specifically the right to prosecute the suit against the sellers of the property, at the October 9, 2007 foreclosure. In the absence of documentation conveying any such assets from the trustee to the Bank and/or notification to Providence of the conveyance of the claim, the apparent lack of separate consideration paid for such assets, and the entire circumstances surrounding the preparation of the Bill of Sale in October 2008, we cannot conclude that Providence's cause of action against Crews was extinguished by the foreclosure sale. As noted by Providence, Bank of America did not amend its pleadings following the foreclosure to assert that, following the foreclosure, it was the owner of the claims which it had earlier asserted it had a "superior right" to prosecute; the court made no finding as to the Crews defendants' claim to ownership of the cause of action. Additionally, the circumstances surrounding the issuance of the October 7, 2008 bill of sale, asserted by Providence to be a genuine issue of material fact, was not discussed by the trial court and no findings were made relative thereto.

Taking the strongest view of the evidence, discarding all countervailing evidence and allowing all reasonable inferences in favor of Providence, we are of opinion that Providence successfully sustained its burden in producing facts establishing a genuine issue of fact as to what, if any, assets secured by the UCC financing statement were foreclosed upon, whether any such assets were conveyed to the Bank and later conveyed to a bona fide purchaser for value or abandoned by the Bank, and the effect of such sale or abandonment on the various parties to this aspect of the litigation. Consequently, the trial court erred in granting summary judgment.[10]

## III. Conclusion

For the foregoing reasons, the judgment of the Chancery Court is reversed and the case remanded for further proceedings in accordance with this opinion.

_____
RICHARD H. DINKINS, JUDGE

---

[10] We hold only that a genuine issue of material fact exists as to whether Providence's cause of action was foreclosed upon and transferred to the Bank of Nashville, such that it could be conveyed to Crews on October 8, 2008. We express no opinion as to the merits of any claim, as to any issue arising from the conveyance to Crews, or arising from Bank of America's voluntary dismissal of the claims asserted against the SC Group and Crews Investments.