# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
### May 7, 2008 Session

## TENNIE MARTIN ET AL. v. NORFOLK SOUTHERN RAILWAY COMPANY ET AL.

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Anderson County**
**No. A2LA0325    Donald Ray Elledge, Judge**

---

**No. E2006-01021-SC-R11-CV - Filed November 14, 2008**

---

This case comes before us on an appeal of the trial court's grant of summary judgment in favor of the defendants. Because the plaintiffs have established the existence of several genuine issues of material fact, we conclude that summary judgment is inappropriate. We further conclude that the trial court did not err in excluding evidence of a defendant's subsequent remedial measures. We therefore reverse the trial court's judgment and remand for further proceedings.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed**

JANICE M. HOLDER, C.J., delivered the opinion of the court, in which WILLIAM M. BARKER, CORNELIA A. CLARK, and GARY R. WADE. WILLIAM C. KOCH, JR., JJ., concurring in part.

Amy J. Farrar and Donald N. Capparella, Nashville, Tennessee, and J.D. Lee, Knoxville, Tennessee, for the Appellants, Tennie Martin and Roya Mitchell.

Emily L. Herman-Thompson and John William Baker, Jr., Knoxville, Tennessee, for the Appellees, Norfolk Southern Railway Company and Anthony D. Worley.

## OPINION

### I. Factual and Procedural History

### A.

This case arises out of the tragic death of Kathryn Martin, who was killed when her vehicle was hit by a train. The following facts about the incident are undisputed.

The collision occurred on May 12, 2002, at approximately 9:00 a.m. On that day, the weather was clear, and there was no rain. Mrs. Martin was operating her pickup truck northward on Marlow

Circle, a road leading into the parking lot of Moran Baptist Church. Norfolk Southern Railway Company ("Norfolk") maintains railroad tracks that intersect this section of Marlow Circle. The railroad crossing at that location is of a type commonly described as a passive crossing–that is, it does not contain any traffic control devices that activate when a train is approaching. Rather, the crossing is marked with crossbuck signs warning motorists that a railroad crossing is ahead. In addition, the crossing consists of two separate tracks: a mainline track, which carries regular train traffic; and a storage track, which is primarily used for storing equipment. From Mrs. Martin's direction of approach, she would have crossed the storage track before reaching the mainline track. The area along the tracks contained trees and other vegetation that obscured motorists' view of the tracks to some degree. The trees and vegetation were located on Norfolk's right-of-way.

Mrs. Martin was very familiar with this particular crossing and consulted with other members of her family to develop an agreed procedure for crossing the tracks safely. According to the Martin family agreement, members of the family would stop in advance of the tracks, lower the windows of the vehicle slightly, turn the radio volume down or off, keep a lookout for a train, listen for a train, and refrain from crossing the tracks until it could be determined that no train was approaching.

On the day in question, Mrs. Martin came to a complete stop before crossing either the storage track or the mainline track. As she was stopped, a train owned by Norfolk and operated by Norfolk's engineer, Anthony Worley, approached from Mrs. Martin's right at approximately thirty-three miles per hour. The train's conductor, Danny Martin ("Conductor Martin") saw the front bumper and hood of Mrs. Martin's truck while she was stopped short of the storage track. He first became aware of the front of her vehicle when the train was approximately 400 feet from the crossing. Given the speed of the train, it would have taken approximately 8.3 seconds for the train to travel 400 feet. At some point during that period of time, Mrs. Martin began to move her vehicle forward. She crossed over the storage track onto the mainline track and was hit by the train.

**B.**

Teddy Martin,[1] the surviving husband of Mrs. Martin, and Tennie Martin and Roya Mitchell, the adult children of Mrs. Martin, filed suit against Norfolk and Mr. Worley. In their complaint, the plaintiffs allege that Norfolk permitted vegetation at the crossing to block Mrs. Martin's view of the approaching train and that Mr. Worley violated Tennessee Code Annotated section 65-12-108(2) (2004) by failing to sound the train's whistle as the train approached the crossing. The plaintiffs allege that each of these failures was not only negligent but also reckless. Accordingly, the plaintiffs are seeking both compensatory and punitive damages.

---

[1] Teddy Martin died on September 13, 2004, and the plaintiffs' complaint was amended to list Tennie Martin and Roya Mitchell as plaintiffs individually and in their capacities as co-personal representatives of Mrs. Martin's estate.

## 1. The Defendants' Motion for Summary Judgment

The defendants, Norfolk and Mr. Worley, moved for summary judgment, arguing that there were no genuine issues of material fact and that Mrs. Martin was at least fifty percent at fault as a matter of law. The defendants' motion includes several factual assertions.

First, the defendants assert that Mrs. Martin had ample visibility from her initial stopped position and would have seen the train had she merely looked. To support this claim, the defendants submitted photographs that show the visibility from various locations at the crossing.

Second, the defendants contend that Mrs. Martin's vehicle moved from its initial position and stopped a second time near the storage track. The defendants refer to the testimony of Conductor Martin to support this assertion.

Third, the defendants assert that from the position of her second stop, Mrs. Martin had a better opportunity to see the train and had more than enough time to safely maneuver her vehicle once the train became visible. In support of these assertions, the defendants offered the deposition testimony of their expert witness, Charles Manning. Mr. Manning testified that within fifteen to twenty feet of the mainline track a motorist would have 900 to 1000 feet of visibility. Mr. Manning further testified that under these circumstances nine to ten seconds would be sufficient for a person to see a train, react, and bring a vehicle to a stop in time to avoid a collision. Conductor Martin also testified that a motorist could see a substantial distance from the storage track.

Finally, the defendants claim that Mr. Worley repeatedly blew the train's whistle as the train approached the crossing and that Mrs. Martin had an opportunity to hear the train had she merely listened for it. In support of this assertion, the defendants offered the deposition testimony of Mr. Worley and the affidavits of two witnesses who stated that they heard a train whistle around the time of the collision. In light of these alleged facts, the defendants argue that no reasonable jury could conclude that Mrs. Martin acted reasonably or that she was any less than fifty percent at fault for the collision.

## 2. The Plaintiffs' Response to the Defendants' Motion for Summary Judgment

In the plaintiffs' response to the motion for summary judgment, the plaintiffs set forth their own factual assertions. First, the plaintiffs assert that Mrs. Martin initially stopped her vehicle 12.93 feet from the near rail of the storage track and 27 feet from the near rail of the mainline track. In support of this assertion, the plaintiffs submit the testimony and affidavit of their expert, Kenneth Heathington. Mr. Heathington based his calculation of Mrs. Martin's stopping position on Conductor Martin's testimony that he could see the front bumper and hood of Mrs. Martin's truck when the train was approximately 400 feet from the crossing.

Second, the plaintiffs assert that from this stopped position, vegetation would have limited Mrs. Martin's ability to see more than 300 feet in the direction from which the train was approaching. This assertion is also based on the testimony and affidavit of Kenneth Heathington.

Third, the plaintiffs assert that when Mrs. Martin began to move forward from her stopped position she could not see the train because it was still over 300 feet away. This assertion is consistent with Conductor Martin's testimony that the train was 400 feet away from the crossing when he first became aware of Mrs. Martin's vehicle.

Fourth, the plaintiffs assert that Mrs. Martin did not stop a second time but rather moved slowly and continuously across the crossing. In support of this assertion, the plaintiffs provide the deposition testimony of an eyewitness, Cecil Smith. According to Mr. Smith, Mrs. Martin's vehicle was "creeping" across the railroad crossing prior to the collision. The plaintiffs also rely on Conductor Martin's initial written statement in which he checked a box indicating that Mrs. Martin had "Stopped, then Proceeded" rather than checking a box designated "Other" and describing Mrs. Martin's second stop.

Fifth, the plaintiffs claim that once Mrs. Martin began to move forward from her initial stopped position she had insufficient time to perceive the train and bring her vehicle to a stop short of the mainline tracks. These allegations are also supported by the testimony and affidavit of Kenneth Heathington.

Finally, the plaintiffs claim that Mr. Worley did not sound the train's whistle as the train approached the crossing. In support of this assertion, the plaintiffs submit Mr. Smith's testimony that he was in a position to hear a whistle but did not hear it. The plaintiffs argue that these factual assertions demonstrate the existence of genuine issues of material fact and therefore the defendants' motion for summary judgment should have been denied.

### 3. The Rulings of the Trial Court and Court of Appeals

In its ruling, the trial court emphasized that Mrs. Martin could see at least 300 feet from her stopped position and that she was familiar with the crossing. Specifically, the trial court stated, "Had she remained stopped, had she looked and listened, there's no question in my mind, and in my opinion no question in any reasonable mind that she could have seen the train." The trial court determined that no reasonable jury could conclude that Mrs. Martin was less than fifty percent at fault for the collision. Accordingly, the trial court granted the defendants' motion for summary judgment.

In a divided decision, the Court of Appeals affirmed the trial court's grant of summary judgment. The majority concluded that the dispute concerning whether Mr. Worley sounded the train's whistle was immaterial because the trial court's judgment was based on the determination that Mrs. Martin failed to look for the train. Furthermore, the majority concluded that "the undisputed facts establish that the train was plainly visible and in hazardous proximity to the crossing when decedent proceeded to cross the railroad track" and that Mrs. Martin "could have easily seen the train had she looked." In his dissenting opinion, Judge Susano argued that there were several genuine issues of material fact and that summary judgment was therefore inappropriate. We granted review to provide further guidance regarding the application of summary judgment in this State.

## II. Analysis

### A.

As a preliminary matter, the defendants argue that they are entitled to summary judgment because Tennessee courts do not allow recovery for a claim asserting that an obstruction on a railroad's right-of-way prevented a motorist from seeing a train. In other words, the defendants contend that railroad companies do not have a duty to ensure that railroad crossings provide a reasonable degree of visibility to motorists. This argument is based on a case decided by our Court of Appeals in 1928. See Tenn. Cent. Ry. Co. v. Hayes, 9 Tenn. App. 116 (1928). In that case, the Court of Appeals stated, "Obstructions to vision are not an independent ground of recovery–certainly not, in this case when the defendant did not place them–but they must be considered upon the question of the proper degree of care and vigilance which the railroad company is bound to exercise in the running and management of its train and in giving warnings of its approach." Id. at 122.

This Court, however, has never approved of this holding. On the contrary, we have long recognized that railroads have a statutory and common-law duty to maintain adequate crossings for public highways. Tenn. Pub. Serv. Comm'n v. S. Ry. Co., 554 S.W.2d 612, 613 (Tenn. 1977); see also Tenn. Code Ann. § 65-11-101(a) (2004). It is clear that Norfolk's operation of trains across public roadways necessarily involves a degree of risk to motorists, including Mrs. Martin. The creation of this risk necessarily entails the creation of a corresponding duty to take reasonable precautions to avoid injury to motorists. See Satterfield v. Breeding Insulation Co., No. E2006-00903-SC-R11-CV, 2008 WL 4135605, *4, ___ S.W.3d ___, ___ (Tenn. Sept. 9 2008). We therefore conclude that the duty to maintain an adequate crossing includes a duty to ensure that vegetation on the railroad's right-of-way does not unreasonably interfere with motorists' ability to perceive an oncoming train.[2] To the extent Hayes is inconsistent with this holding, it is overruled. Accordingly, an injured party may recover for a claim based solely on a railroad's breach of its duty to ensure that vegetation on its right-of-way does not unreasonably obstruct motorists' view of approaching trains.

### B.

We now turn to the central issue of whether the trial court correctly determined that no reasonable jury could conclude that Mrs. Martin was less than fifty percent at fault for the collision. The moving party is entitled to summary judgment only if the "pleadings, depositions, answers to

---

[2] By recognizing this duty, it is not our intent to encroach upon federal authority to regulate the railroad industry. Federal regulations currently address the maintenance of vegetation "on or immediately adjacent to roadbed" and therefore preempt state efforts to regulate the maintenance of vegetation in that area. 49 C.F.R. § 213.37 (2007). Federal courts have recognized, however, that a railroad's right-of-way often extends several yards from the roadbed and that federal regulations do not preempt state regulation of vegetation that is on the railroad's right-of-way but not on or immediately adjacent to the roadbed. Mo. Pac. R.R. Co. v. R.R. Comm'n of Tex., 833 F.2d 570, 577 (5th Cir. 1987); see also Shanklin v. Norfolk S. Ry. Co., 369 F.3d 978, 987-88 (6th Cir. 2004). Accordingly, the duty we recognize today extends only to vegetation that is on the railroad's right-of-way but not on or immediately adjacent to the roadbed.

interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; accord Penley v. Honda Motor Co., 31 S.W.3d 181, 183 (Tenn. 2000). The moving party has the ultimate burden of persuading the court that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Byrd v. Hall, 847 S.W.2d 208, 215 (Tenn. 1993). Accordingly, a properly supported motion for summary judgment must show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. See Staples v. CBL & Assocs., Inc., 15 S.W.3d 83, 88 (Tenn. 2000); McCarley v. W. Quality Food Serv., 960 S.W.2d 585, 588 (Tenn. 1998). If the moving party fails to make this showing, then "the non-movant's burden to produce either supporting affidavits or discovery materials is not triggered and the motion for summary judgment fails." McCarley, 960 S.W.2d at 588; accord Staples, 15 S.W.3d at 88.

The moving party may make the required showing and therefore shift the burden of production to the nonmoving party by either: (1) affirmatively negating an essential element of the nonmoving party's claim; or (2) showing that the nonmoving party cannot prove an essential element of the claim at trial. Hannan v. Alltel Publ'g Co., ___ S.W.3d ___, ___ (Tenn. 2008); see also McCarley, 960 S.W.2d at 588; Byrd, 847 S.W.2d at 215 n.5. Both methods require something more than an assertion that the nonmoving party has no evidence. Byrd, 847 S.W.2d at 215. Similarly, the presentation of evidence that raises doubts about the nonmoving party's ability to prove his or her claim is also insufficient. McCarley, 960 S.W.2d at 588. The moving party must either produce evidence or refer to evidence previously submitted by the nonmoving party that negates an essential element of the nonmoving party's claim or shows that the nonmoving party cannot prove an essential element of the claim at trial. Hannan, ___ S.W.3d at ___. We have held that to negate an essential element of the claim, the moving party must point to evidence that tends to disprove an essential factual claim made by the nonmoving party. See Blair v. W. Town Mall, 130 S.W.3d 761, 768 (Tenn. 2004). If the moving party is unable to make the required showing, then its motion for summary judgment will fail. Byrd, 847 S.W.2d at 215.

If the moving party makes a properly supported motion, then the nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist. McCarley, 960 S.W.2d at 588; Byrd, 847 S.W.2d at 215. The nonmoving party may satisfy its burden of production by:

> (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06.

McCarley, 960 S.W.2d at 588; accord Byrd, 847 S.W.2d at 215 n.6. The nonmoving party's evidence must be accepted as true, and any doubts concerning the existence of a genuine issue of material fact shall be resolved in favor of the nonmoving party. McCarley, 960 S.W.2d at 588. "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at

-6-

which the motion is directed." Byrd, 847 S.W.2d at 215. A disputed fact presents a genuine issue if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." Id.

Because the resolution of a motion for summary judgment is a matter of law, we review the trial court's judgment de novo with no presumption of correctness. Blair, 130 S.W.3d at 763. In addition, we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party. Staples, 15 S.W.3d at 89.

**C.**

In the present case, we conclude that the defendants' motion was properly supported. On its face, the defendants' motion negated the elements of breach of duty and causation by setting forth facts that tend to show that Norfolk and Mr. Worley acted reasonably and that Mrs. Martin did not exercise reasonable care. Specifically, the defendants submitted photographic evidence that suggested that some vantage points near the crossing provided substantial visibility down the tracks. Furthermore, the defendants presented evidence that Mrs. Martin made a second stop near the storage track and that she would have had substantial visibility from that location. The defendants also submitted expert testimony that Mrs. Martin would have had sufficient time to see the train, react, and bring her vehicle to a stop in a safe position. These alleged facts tend to show that Norfolk did not fail to provide adequate visibility at the crossing, that Mrs. Martin negligently failed to keep a proper lookout for a train, and that her negligence caused the collision. In addition, the defendants provided evidence that Mr. Worley did sound the train's whistle as he approached the crossing, thus negating the plaintiffs' claim that he breached his duty to blow the whistle. In light of these factual allegations, we have no difficulty concluding that the defendants' motion affirmatively negated essential elements of the plaintiffs' claim and therefore shifted the burden of production to the plaintiffs.

The plaintiffs responded to the defendants' motion by seeking to demonstrate that the defendants had ignored evidence in the record that established the existence of genuine issues of material fact. Specifically, the plaintiffs sought to demonstrate that there were genuine disputes regarding: (1) whether Mrs. Martin was able to see the train before leaving her initial stopped position; (2) whether Mrs. Martin stopped a second time; (3) whether Mrs. Martin had sufficient time to see the train, react, and bring her vehicle to a stop in a safe location; and (4) whether Mr. Worley sounded the train's whistle. We will address each of these issues in turn.

The plaintiffs presented expert testimony that Mrs. Martin stopped her vehicle 12.93 feet from the near rail of the storage track and 27 feet from the near rail of the mainline track. Mr. Heathington's calculation of this distance was based upon Conductor Martin's testimony that he could see the front bumper and hood of Mrs. Martin's truck from approximately 400 feet away. Mr. Heathington also testified that from this position, Mrs. Martin would have been able to see only 300 feet in the direction of the approaching train. Furthermore, the exact timing of Mrs. Martin's decision to leave her stopped position is unclear from Conductor Martin's testimony. Therefore, a reasonable jury could conclude that Mrs. Martin began to pull forward when the train was still more than 300 feet away and was not yet visible to her. Accordingly, we conclude that the plaintiffs'

evidence creates a genuine dispute concerning whether Mrs. Martin was able to see the train before leaving her initial stopped position.

The plaintiffs also presented evidence challenging the defendants' assertion that Mrs. Martin stopped a second time near the storage track. The plaintiffs provided the deposition testimony of an eyewitness, Mr. Smith, who stated that Mrs. Martin's vehicle was "creeping" across the railroad crossing prior to the collision. Mr. Smith did not state that Mrs. Martin stopped a second time. Furthermore, the plaintiffs observe that Conductor Martin's initial written statement did not mention a second stop. Although a space was provided in which Conductor Martin could have provided a more detailed description of the events leading up to the collision, he merely checked a box indicating that Mrs. Martin had "Stopped, then Proceeded." A reasonable jury therefore could conclude that Mrs. Martin did not make a second stop. Accordingly, we conclude that there is a genuine dispute concerning whether Mrs. Martin made such a stop.

The plaintiffs also submitted evidence to counter the defendants' expert's claim that Mrs. Martin had sufficient time to see the train, respond, and avoid the accident. Mr. Heathington, the plaintiffs' expert, directly contradicted this claim. He stated that under the conditions present at the time of the accident, Mrs. Martin would not have had sufficient time to perceive the train and bring her vehicle to a stop short of the mainline tracks. The resolution of conflicting expert testimony is a factual issue that must be reserved for the trier of fact. See McDaniel v. CSX Transp., Inc., 955 S.W.2d 257, 265 (Tenn. 1997) (holding that "the weight to be given to stated scientific theories, and the resolution of legitimate but competing scientific views, are matters appropriately entrusted to the trier of fact"). It is undisputed that the train reached the crossing approximately 8.3 seconds after Conductor Martin first saw Mrs. Martin's vehicle. Although it is unclear exactly when Mrs. Martin left her initial stopped position 27 feet from the mainline track, the facts demonstrate that she would have had 8.3 seconds or less to see the train and stop before the train arrived. While it is clear that Mrs. Martin's visibility would have improved appreciably as she neared the track and as the train neared the crossing, the facts in the record do not provide any concrete answers as to when Mrs. Martin could have or should have seen the train. Accordingly, various inferences reasonably could be drawn. Viewing the facts in the light most favorable to the plaintiffs and affording the plaintiffs the benefit of all reasonable inferences, we believe a reasonable jury could accredit the plaintiffs' expert. Accordingly, we conclude that there is a genuine issue concerning whether Mrs. Martin had sufficient time to see the train, react, and bring her vehicle to a stop in a safe location.

Finally, the plaintiffs presented evidence that Mr. Worley did not sound the train's whistle. Mr. Smith testified that he was in a position to hear the train's whistle but did not hear it.[3] This

---

[3] The defendants have moved this Court to supplement the record with deposition testimony that is purported to disclose that Mr. Smith is hearing impaired. This deposition testimony, however, was not presented to the trial court. Accordingly, the record currently "convey[s] a fair, accurate and complete account of what transpired in the trial court," and no supplementation is necessary. Tenn. R. App. P. 24(g). Although counsel for the defendants did argue before the trial court that Mr. Smith is hearing impaired, it is a familiar maxim that argument of counsel is not evidence. See State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988). Therefore, it would have been inappropriate for the trial

(continued...)

testimony directly contradicts the evidence submitted by the defendants and clearly presents a genuine dispute over whether the whistle blew.

Furthermore, each of these disputes concerns material facts. In Byrd, we held that a fact is material if "it must be decided in order to resolve the substantive claim or defense at which the motion is directed." 847 S.W.2d at 215. Whether the train could be seen from Mrs. Martin's initial stopped position is highly material because it has direct bearing on whether Mrs. Martin was negligent in her failure to see the train before pulling forward. Whether Mrs. Martin stopped a second time is also highly material because it is directly related to whether Mrs. Martin had stopped her vehicle in a position of safety from which she could clearly see the train approaching. If Mrs. Martin did stop her vehicle in such a position, it would be difficult to see how she could reasonably decide to resume proceeding over the tracks. If, on the other hand, Mrs. Martin was never stopped in such a position, the plaintiffs' theory that Mrs. Martin simply did not have time to react to the approaching train is significantly more plausible. Similarly, whether Mrs. Martin had sufficient time to see the train, react, and bring her vehicle to a stop is central to the question of whether Mrs. Martin was negligent in her failure to yield to the train. Finally, whether Mr. Worley blew the train's whistle is material to determining whether Mr. Worley and Norfolk breached their statutory duty to sound the train's whistle prior to reaching the crossing. Tenn. Code Ann. § 65-12-108(2). Furthermore, whether the whistle blew is also relevant to determining whether Mrs. Martin could have reasonably avoided the collision. We therefore conclude that the plaintiffs have demonstrated the existence of several genuine issues of material fact and that the trial court erred in concluding that no reasonable jury could determine that Mrs. Martin was less than fifty percent at fault.

We are puzzled that the trial court and the majority of the Court of Appeals failed to recognize the myriad of genuine and material factual disputes presented by this case. The plaintiffs have alleged that the defendants breached a duty owed to Mrs. Martin and that the alleged breach of duty was the actual and proximate cause of Mrs. Martin's death. Furthermore, the plaintiffs have presented evidence supporting each element of their case, and this evidence must be viewed in the light most favorable to their case. Although a trial court may conclude that the plaintiffs' case is not particularly strong, it is not the role of a trial or appellate court to weigh the evidence or substitute its judgment for that of the trier of fact. Byrd, 847 S.W.2d at 211. This case should serve as a reminder to lower courts that summary judgment is not appropriate in cases that present genuine disputes of material fact.

**D.**

The final issue for our determination relates to a pretrial evidentiary ruling of the trial court. Prior to the trial court's grant of summary judgment, the defendants filed a motion in limine requesting the exclusion of evidence that Norfolk cleared the vegetation at the crossing thirty-one

---

[3](...continued)
court to consider Mr. Smith's purported hearing loss, and we decline to consider it for the first time on appeal. In any event, such evidence goes only to the weight of Mr. Smith's testimony. Issues concerning the weight of testimony are normally reserved for the trier of fact. Miller v. Willbanks, 8 S.W.3d 607, 615 (Tenn. 1999).

-9-

months after Mrs. Martin's death. The defendants sought the exclusion of this evidence based on the rule governing subsequent remedial measures. See Tenn. R. Evid. 407 (2008). After hearing argument on the motion, the trial court excluded the evidence of the clearing from the compensatory damages stage of the trial but agreed to admit it in the event that a second punitive damages stage became necessary. The plaintiffs have appealed the trial court's ruling.

Tennessee Rule of Evidence 407 provides:

When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent remedial measures is not admissible to prove strict liability, negligence, or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving controverted ownership, control, or feasibility of precautionary measures, or impeachment.

The purpose of this evidentiary rule is to "encourage remedial measures in order to serve the public's interest in a safe environment." Neil P. Cohen et al., Tennessee Law of Evidence § 4.07[2] (5th ed. 2005). The word "subsequent" refers to events that occur after the events giving rise to the lawsuit. Rothstein v. Orange Grove Ctr., Inc., 60 S.W.3d 807, 813 (Tenn. 2001). An action is "remedial" if it "chang[es] a situation, usually an unsafe property or product, to prevent the situation from causing further injury." Id. As with other evidentiary matters, we review a trial court's decision to admit or exclude evidence under Tennessee Rule of Evidence 407 under an abuse of discretion standard. See State v. Lewis, 235 S.W.3d 136, 141 (Tenn. 2007). "An abuse of discretion occurs when the trial court applies an incorrect legal standard or reaches a conclusion that is 'illogical or unreasonable and causes an injustice to the party complaining.'" Id. (quoting State v. Ruiz, 204 S.W.3d 772, 778 (Tenn. 2006)).

In response to the defendants' motion, the plaintiffs have not offered a permissible ground for introducing the evidence. Rather, the plaintiffs argue that the clearing of the vegetation was neither subsequent nor remedial. While the plaintiffs acknowledge that the clearing of the vegetation followed the accident, they contend that the clearing was not subsequent because it was separated by too great a period of time. Furthermore, they argue that the clearing was not remedial because it was carried out in accordance with Norfolk's internal policies rather than with the intent of remedying the condition that allegedly lead to Mrs. Martin's death.

We conclude that these arguments are without merit. The clearing is remedial because it corrected an allegedly dangerous condition and made the crossing safer for future motorists. Rothstein, 60 S.W.3d at 813. That the clearing was carried out pursuant to corporate policy does not undermine the remedial nature of the action. In addition, the clearing of the vegetation undisputedly followed the accident giving rise to this action. See id. That it occurred over two years later does not make the event any less subsequent. Accordingly, we conclude the trial court did not abuse its discretion in determining that Norfolk's clearing of the vegetation is a subsequent remedial measure.

We recognize that other jurisdictions have held that subsequent remedial actions will not be excluded if the implementation of the remedy began before the accident but was not completed until after the accident. E.g., Schmeck v. City of Shawnee, 651 P.2d 585, 600 (Kan. 1982); Cupp v. Nat'l R.R. Passenger Corp., 138 S.W.3d 766, 776 (Mo. Ct. App. 2004). These cases, however, are factually distinguishable from the case before us. Although Norfolk had a policy of clearing vegetation from crossings prior to the collision, there is no evidence that Norfolk had made a decision to clear the vegetation at this particular crossing prior to the accident. Accordingly, these cases are inapposite, and we express no opinion regarding their adoption.

Finally, the plaintiffs argue that the exclusion of subsequent remedial measures is unnecessary in this case because Norfolk's clearing of the vegetation was required by Tennessee Code Annotated section 65-6-132(a) (2004). According to the plaintiffs' argument, the application of Tennessee Rule of Evidence 407 is unnecessary to encourage railroads to take remedial measures because they are already statutorily obligated to provide visibility at crossings. Tennessee Code Annotated section 65-6-132(a) provides, "Every company or person operating a railroad in this state shall cut down all trees standing on its lands which are six (6) or more inches in a diameter two feet (2') above the ground and of sufficient height to reach the roadbed if they should fall." The primary purpose of this statute is clearly to prevent large trees from falling across railroad tracks. Shanklin, 369 F.3d at 992. Whether or not this statute is also intended to provide visibility to motorists, it is clear that compliance with the statute alone will not ensure that motorists have reasonable visibility at a crossing. After all, trees that are less than six inches in diameter or too short to reach the tracks may just as easily obscure a motorist's view of a train. Accordingly, compliance with the statute alone is insufficient to encourage railroad companies to remedy dangerous crossings. We therefore conclude that the application of Tennessee Rule of Evidence 407 is necessary to encourage railroads to remedy visibility problems at crossings where accidents have occurred. The judgment of the trial court in this regard is affirmed.

### III. Conclusion

We conclude that the plaintiffs have successfully demonstrated the existence of several genuine issues of material fact. Accordingly, we reverse the trial court's judgment and remand for proceedings consistent with this opinion. Costs of this appeal are taxed to the appellees, Norfolk Southern Railway Co. and Anthony D. Worley, for which execution may issue if necessary.

_____
JANICE M. HOLDER, CHIEF JUSTICE