# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### November 7, 2012 Session

## CHARLES BLALOCK & SONS, INC. v. FAIRTENN, LLC ET AL.

### Appeal from the Chancery Court for Sevier County
### Nos. 08-9-370 & 09-6-298    Telford E. Forgety, Jr., Chancellor

---

### No. E2011-02594-COA-R3-CV-FILED-DECEMBER 27, 2012

---

Branch Banking and Trust Company ("BB&T") provided financing for a construction project and recorded a deed of trust. The excavation contractor, Charles Blalock & Sons, Inc., started work on the project and had done substantial work when Marshall & Ilsley Bank ("M&I Bank") made a loan and recorded its trust deed. BB&T was paid off out of the proceeds of the loan from M&I Bank. Blalock was also paid current with the proceeds from the M&I Bank loan. BB&T released its trust deed. The developer later defaulted, and Blalock filed this action to enforce its statutory lien. M&I Bank's assignee, Cay Partners, LLC, filed a counterclaim asserting that it should be entitled to the priority position of BB&T. Blalock and Cay filed competing motions for summary judgment. The trial court granted Blalock's motion. Cay appeals. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Robert R. Carl, Knoxville, Tennessee, for the appellant, Cay Partners, LLC.

Robert P. Noell, Knoxville, Tennessee, for the appellee, Charles Blalock & Sons, Inc.

### OPINION

#### I.

This action arises out of a real estate development project known as Catawba Peak ("the Project") located in Pigeon Forge. The developer was Fairtenn, LLC. On or about

March 15, 2005, BB&T provided the initial funding to Fairtenn through loans in an aggregate amount of $3,420,350. The loans were secured by three deeds of trust recorded in 2005.

On September 22, 2006, Blalock contracted to perform some of the improvements for the Project, including excavation and grade work. On or about February 26, 2007, Fairtenn obtained additional financing for the Project of approximately $20,000,000 from M&I Bank. Fairtenn executed a deed of trust on the Project in favor of M&I Bank to secure its loans. M&I Bank recorded the deed of trust on March 1, 2007.

Prior to the recording of the M&I Bank deed of trust, Blalock commenced work on the Project. M&I Bank knew at closing that Blalock was working on the project and was owed for work done in the approximate amount of $1,000,000. Blalock was presented with a proposed agreement which would have subordinated any contractor's lien it had to M&I Bank's deed of trust. Under Fairtenn's agreement with M&I Bank, Fairtenn was obligated to secure an executed subrogation agreement from Blalock within 30 days of the loan closing. Blalock refused to sign the subordination agreement. Nevertheless, M&I Bank continued to fund the Project.

From the proceeds of the M&I Bank loan, BB&T's loans of approximately $3.5 million were paid. BB&T executed and recorded releases of its deeds of trust. From the same M&I Bank loan, Blalock was paid $1,148,105.30 for work Blalock had completed through the closing date of the loan. Approximately $750,000 of the proceeds of the M&I Bank loan was used to pay other liens and debts incurred through the closing date. As of February 26, 2007, M&I Bank had paid out $5,479,884.79.

After the closing of the M&I Bank loan, Blalock continued to perform work on the project. Blalock received a progress payment from Fairtenn on August 23, 2007, in the amount of $1,692,108.20 and another progress payment in the amount of $905,090.12 on January 2, 2008. Thereafter, Fairtenn defaulted on its contract with Blalock. Blalock recorded a lien on September 3, 2008, in the amount of $264,062.09. Shortly thereafter, on September 9, 2008, Blalock filed this action to enforce its lien. It is undisputed that Blalock is owed $264,062.09 for work done on the Project.

On or about August 2, 2010, M&I Bank assigned all its rights and obligations with respect to the Project to Cay Partners, LLC. The result is that Cay Partners now stands in the "shoes" of M&I Bank. On December 29, 2010, the trial court entered an order holding that Blalock achieved "visible commencement" of operations, as the term is defined in Tenn. Code Ann. § 66-11-101(17) (2004) (now in 2012 Supp. as definition (16)), before M&I Bank's deed of trust was recorded; therefore, Blalock's contractor's lien related back to commencement and took priority over the deed of trust. In July 2011, Cay Partners, as

assignee of M&I Bank, filed a counterclaim against Blalock asserting that the M&I Bank deed of trust had priority over Blalock's lien by virtue of the doctrine of equitable subrogation. The thrust of Cay's claim was that it should be entitled to the priority position BB&T *had* enjoyed because M&I Bank paid off the BB&T loan.

Blalock filed a motion for summary judgment asserting that the doctrine of equitable subrogation does not apply under the undisputed facts. A few days later, Cay filed a motion for summary judgment positing that the doctrine does apply.

The trial court granted Blalock's motion for summary judgment. It held that equitable subrogation does not apply because

> a) M&I Bank/Cay Partners cannot demonstrate that M&I Bank paid off the BB&T loans under a mistaken belief that M&I Bank would occupy a first position lien on the Project.
>
> b) M&I is guilty of culpable negligence by continuing to fund the Project without advising Blalock it was maintaining a first mortgage position.
>
> c) The equities do not weigh in favor of M&I Bank/Cay Partners, and Blalock would be prejudiced by the application of the doctrine of equitable subrogation. Consequently, Blalock has negated an essential element of M&I Bank/Cay Partners' claim for equitable subrogation or has otherwise shown that M&I Bank/Cay Partners cannot prove an essential element of the claim of equitable subrogation at trial.

The order incorporated a memorandum opinion delivered by the court from the bench. In the memorandum opinion, the court addressed, among other things, whether M&I Bank advanced monies based on a mistake:

> I mean, there just . . . could not have been any mistake . . . because M&I . . . paid some lien claims out of this very same project and asked for subordination agreements. They, therefore, had to know . . . when they didn't get those subordination agreements that they weren't going to be in first position.

\* \* \*

. . . . They're charged with knowledge of the law . . . that monies disbursed after visible commencement of operations is . . . secondary to the . . . lien claims.

* * *

. . . . M&I did not disburse the monies under the mistaken impression that . . . it was going to have first priority over bills generated by the continuation of an ongoing project.

II.

Cay presents the following issues, which we have repeated verbatim from its brief:

> Did the Chancery Court err when it denied Cay Partners, LLC's Motion for Summary Judgment as to equitable subrogation by finding that Charles Blalock & Sons would be prejudiced by application of the doctrine of equitable subrogation?

> Did the Chancery Court err when it denied Cay Partners, LLC's Motion for Summary Judgment as to equitable subrogation by relying upon an analysis founded on actual knowledge and culpable negligence?

> Did the Chancery Court err when it awarded Charles Blalock & Sons, Inc. summary judgment on its claim despite material questions of fact regarding whether Blalock would be prejudiced by awarding Cay Partners, LLC equitable subrogation?

III.

We review a trial court's order granting summary judgment de novo with no presumption of correctness. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008). A party is entitled to summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. A dispute about a fact that is not material to the outcome of a case will not preclude summary judgment. *Byrd v. Hall*, 847 S.W.2d 208, 214-15 (Tenn. 1993). "Cases involving priority of rights among lienholders and mortgage holders where the [material] facts are undisputed are solely questions of law." *Bankers Trust Co. v. Collins*, 124 S.W.3d 576, 578 (Tenn. Ct. App. 2003).

IV.

A.

Cay's brief concludes its summary of argument with the statement that "[t]he law. . . is somewhat muddled in Tennessee regarding lien priority and equitable subrogation." However, we need not go into any muddy waters to decide this case. We commend the reader to our opinion in *Trustmark National Bank v. Deutsche Bank National Trust Company*, W2009-01658-COA-R3-CV, 2010 WL 3269978 (Tenn. Ct. App. W.S., filed Aug. 19, 2010) for a lengthy discussion of the leading cases on equitable subrogation, including *Dixon v. Morgan*, 285 S.W. 558 (Tenn. 1926) and *Castleman Construction Co. v. Pennington*, 432 S.W.2d 669 (Tenn. 1968). In *Trustmark*, we provided the following "summary" of the law of subrogation:

> Generally, liens are given priority based on the order in which they are recorded; liens recorded first typically have priority over those recorded at a later date. Subrogation is the substitution of a party in the place of a creditor, so that the party in whose favor subrogation is exercised succeeds the creditor in relation to the debt. Subrogation is a creature of equity; its purpose is to provide an equitable adjustment between the parties, based on the facts and circumstances of the case. It is not a right, but a remedy whose application depends on a balancing of the equities involved. Subrogation is not appropriate where the equities of the parties are equal, where the parties' rights are not clear, or where it would prejudice the legal or equitable rights of another. Relevant to this balancing of equities is the degree of negligence of the party seeking subrogation. While ordinary negligence or mistake alone is usually not a bar to subrogation, especially where the equities weigh in the favor of the party seeking subrogation, culpable negligence will generally bar such a remedy.

2010 WL 3269978 at *9 (citations omitted) *(quoting Indymac Mortgage Holdings, Inc. v. Kauffman,* No. W2000-01453-COA-R3-CV, 2001 WL 1683779 at *4 (Tenn. Ct. App. W.S., filed Dec. 21, 2001)). In addition to the above key points, the cases universally require a showing that the party seeking subrogation is in a junior lienholder position because of fraud or a mistake of fact. *See Dixon*, 285 S.W. at 561; *Castleman*, 432 S.W.2d at 677 (discussing requirement of mistake in the context of degree of negligence involved); *Trustmark*, 2010

WL 3269978 at *13, n.13, *14, n.14; **Bankers Trust Co. v. Collins**, 124 S.W.3d 576, 579 (Tenn. Ct. App. 2003)("Advanta did not pay the Sterling debt through fraud or mistake and is not entitled to subrogation to Sterling's rights . . . on this basis.").

B.

Cay argues that Blalock would not be prejudiced by allowing Cay's deed of trust to take priority over Blalock's statutory lien. Blalock's lien dates back to the date of visible commencement which was after BB&T's deed of trust but before M&I Bank's deed of trust. It is undisputed that Blalock is owed $262,002.09 for work done after the closing on the M&I Bank loan. Cay's argument is based on the fact that, at the time M&I Bank advanced funds on the loan, Blalock was owed more than it is now owed. Blalock counters with its assertion that being owed $1million behind a $3 million loan is better than being owed $262,000 behind a much larger loan. Cay also argues that Blalock was paid over $3.5 million for the work it has done on the Project, some of which must have been profit. Cay argues that there are genuine issues of material fact as to whether Blalock, on the whole, has made a profit on his Project and whether it lost the benefit of guaranties by some of the principals of the developer, which was part of the reason for the trial court's finding of prejudice.

We agree with Cay that the state of the record leaves room for dispute whether Blalock waived personal guaranties by the developer and whether Blalock made a profit even without the $262,002.09 it is now owed. However, we do not see these disputes to be material in this case. We believe, and so hold, that the prejudice inquiry is directed at whether Blalock will be unjustly enriched if Cay is not allowed equitable subrogation. *See, e.g.*, **Bankers Trust**, 124 S.W.3d at 580 ("The rationale to employ equitable subrogation is to prevent unjust enrichment."); **Associates Home Equity Services, Inc. v. Franklin Nat'l Bank**, No. M2000-00516-COA-R3-CV, 2002 WL 459007 at *3-4 (Tenn. Ct. App. M.S., filed March 26, 2002)(equitable subrogation rests upon the maxim that one should not be enriched by another's loss). The money for which Blalock claims a lien is for work it performed *after* the closing of the M&I Bank loan, and after it had refused to sign the proposed subrogation agreement – all of which was well known to M&I Bank. Cay, and Fairtenn, received the benefit of that work for the contracted price without the work having been paid for. This fact alone distinguishes the present case from those cases Cay relies on that have allowed equitable subrogation; in all those cases the intervening lienholder in Blalock's position made no additional outlay after the subrogated lienholder advanced money[1]. There is no contention that Blalock is charging some price in excess of the contract

---

[1]For example, in the **Dixon** case, the intervening creditor was Gibson County Bank on a $3,000 loan. 285 S.W. at 559. **Castleman** does not fit the classic pattern in that the party seeking subrogation was a title insurer rather than a lender, but there was no issue of additional outlay. 432 S.W.2d at 671-73. In

(continued...)

or that it did not perform the work. Thus, there is no room for dispute that Blalock would be prejudiced by allowing Cay equitable subrogation.

C.

Cay next argues that the trial court erred in finding that Cay, by and through M&I Bank, had actual knowledge of the Blalock lien and committed culpable negligence. Cay further asserts that "there is no bright line that marks when a lender is deserving and when one is not." Cay relies on this purported uncertainty to argue that it should be allowed subrogation even if M&I Bank knew Blalock had a superior lien. Cay also argues that M&I Bank did not know Blalock had a lien because Blalock was paid current when M&I Bank made the loan. This is a misleading word game; what M&I Bank knew on the undisputed facts of this case is that Blalock would acquire a lien for any work on the Project that was not paid for, and that lien would relate back to a time before the recording of the M&I Bank trust deed. In other words, M&I Bank, and now Cay, had actual knowledge of the lack of priority of their encumbrance. We also disagree with Cay that any uncertainty in the law extends to the point of protecting a lender with actual knowledge of an intervening superior lien. There is no Tennessee case, of which we are aware, that awards equitable subrogation to a party that takes action with actual knowledge of a superior lien. On the other hand, there is an abundance of authority that subrogation is not allowed to a party with actual knowledge of a superior lien. *Bankers Trust*, 124 S.W.3d at 579 (equating "culpable negligence" with awareness of intervening creditor's position); *Associates*, 2002 WL 459007 at *7 (interpreting *Dixon* to bar a claim for subrogation by a party with actual notice of an intervening lien); *Citicorp Mortgage, Inc. v. Bancorpsouth Bank*, No. W2004-00332-COA-R3-CV, 2004 WL 2715278 at *1 (Tenn. Ct. App. W.S., filed Nov. 19, 2004)("Because Appellant Bank had knowledge of Appellee Bank's deed of trust prior to making the loan, Appellant Bank is not entitled to equitable subrogation."). Further, as we have noted, there must be an element of fraud or mistake. Allowing subrogation to a party with knowledge of a superior lien would eliminate any requirement of fraud or mistake. Accordingly, we hold that the trial court correctly held as a matter of law that M&I Bank, and Cay, are barred from the remedy of subrogation because of their actual knowledge of Blalock's superior position.

D.

Cay next argues that the trial court erred in finding that it did not make a mistake. For support that it really did believe it would have a priority position, Cay cites its own

_____

[1](...continued)
*Trustmark*, the intervening liens were based on judgments for a sum certain. 2010 WL 3269978 at *1. In *Associates,* the liens were all mortgages to secure bank loans. 2002 WL 459007 at *1.

interrogatory answer. However, at best, the answer shows a subjective belief based on Cay's refusal to acknowledge the effect of the mechanic's lien statute. Cay even goes so far as to say that the tender of the subrogation agreement to Blalock, and its advancement of approximately $20 million after receiving Blalock's refusal, somehow proves its mistake. The trial court was correct that any mistake attributable to Cay, through M&I Bank, is a mistake of law and not of fact. As we have noted, equitable subrogation must be grounded in fraud or mistake in fact. *Dixon*, 285 S.W. at 561. Where a party knows the true facts, and has the ability to protect itself as Cay did, the law will not displace a priority lienholder through equitable subrogation. *Bankers Trust*, 124 S.W.3d at 579; *Citicorp*, 2004 WL 2715278 at *5. Therefore, we hold that the trial court committed no error in finding there was no mistake to support equitable subrogation.

E.

Finally, Cay argues we should adopt the approach of the Restatement (Third) of Property, Mortgages § 7.6. Cay asserts that the focus of the Restatement is on the intent of the party asking for subrogation rather than on his or her knowledge or culpability. However, Cay concedes that even under the Restatement approach, subrogation is not allowed where there is prejudice to a priority lien holder. Since we have held that the trial court did not err in holding that Blalock would be prejudiced as a matter of law by subrogating Cay to BB&T's priority position, we need not go further on this argument. Even if we were inclined to consider the Restatement approach, we see no way we could adopt that approach over *Dixon*, which considers the culpability of the party asking for subrogation. 285 S.W. at 561.

F.

In summary, we find no reversible error in the trial court's judgment denying equitable subrogation. Cay, through M&I Bank, had knowledge of Blalock's priority position. As the trial court found, it could have overcome that position by simply refusing to advance money without the subrogation agreement Fairtenn was obligated to secure from Blalock, or by holding everything at bay for 90 days. Tenn. Code Ann. § 66-11-104(b)(2004). Since it was within Cay's prerogative and ability to protect itself, equity will not impose the impact of Cay's decision on Blalock. *Bankers Trust*, 124 S.W.3d at 579; *Citicorp*, 2004 WL 2715278 at *5. On the undisputed facts of this case, the equities do not weigh in Cay's favor.

V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, Cay Partners, LLC. This case is remanded, pursuant to applicable law, for enforcement of the trial court's judgment and for collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE