IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 13, 2013 Session

## EILEEN KING, AS NATURAL PARENT AND NEXT OF KIN OF HALEY KING v. KENNETH FOHT, ET AL.

Appeal from the Circuit Court for Shelby County
No. CT00020511     Karen R. Williams, Judge

No. W2013-00518-COA-R3-CV - Filed September 20, 2013

After her daughter was attacked by a tenant's dog, the mother plaintiff sued the tenant and the property owners. The trial court granted summary judgment in favor of the property owners based upon a lack of knowledge/notice of the dog's vicious propensities. For the following reasons, we reverse the grant of summary judgment and we remand for further proceedings.

## Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Randall J. Fishman, Richard S. Townley, Samuel M. Fargotstein, Memphis, Tennessee, for the appellants, Eileen King, as natural parent and next of kin of Haley King

Meredith A. Lucas, Memphis, Tennessee, for the appellees, Kenneth Foht and Laurie Foht

# OPINION

## I. FACTS & PROCEDURAL HISTORY

On April 8, 2010, eight-year old Hailey King was allegedly attacked and injured by a Pit Bull dog while walking along a sidewalk adjacent to Northdale Drive in Memphis, Tennessee. The dog was allegedly owned by Latoya Redwing, who rented residential property at 4900 Northdale Drive from owners Kenneth and Laurie Foht.[1] At all times relevant to this lawsuit, the Fohts resided in Salem, Oregon, and they retained agents to handle the leasing and management of the property: Harry Spore from December 2008 to April 2010, and Terry Kerr beginning April 1, 2010.

On January 14, 2011, Eileen King, as natural parent and next of kin of Hailey King, filed a Complaint against Latoya Redwing alleging negligence for failure to protect third parties from her dog, and against Kenneth Foht and Laurie Foht alleging negligence for failure to inspect, investigate and remove the dog. The Fohts moved for summary judgment claiming that they had no notice of the vicious propensities of the dog, and therefore, that the duty element of Ms. King's negligence claim had been negated. The trial court granted summary judgment in favor of the Fohts, and Ms. King appeals.[2]

## II. ISSUE PRESENTED

Ms. King presents the following issue for review:

1. Whether the trial court erred in finding that the landlords had no duty to protect third parties from a dog kept by a tenant on their premises when the lease of the subject property contained a no-pets provision, thereby creating a duty on the part of the landlord and/or their agents to investigate, inquire, and/or remove animals with vicious propensities from the property.

For the following reasons, we reverse the grant of summary judgment in favor of the Fohts and we remand to the trial court for further proceedings.

---

[1]The stated lease period was from December 2, 2008 to December 31, 2009. However, Ms. Redwing apparently continued to reside at the property at least until April 2010.

[2]This order was made final pursuant to Tennessee Rule of Civil Procedure 54.02.

## III. STANDARD OF REVIEW

A motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Tenn. R. Civ. P. 56.04.** "When ascertaining whether a genuine dispute of material fact exists in a particular case, the courts must focus on (1) whether the evidence establishing the facts is admissible, (2) whether a factual dispute actually exists, and, if a factual dispute exists, (3) whether the factual dispute is material to the grounds of the summary judgment." *Green v. Green,* 293 S.W.3d 493, 513 (Tenn. 2009).

"The party seeking the summary judgment has the burden of demonstrating that no genuine disputes of material fact exist and that it is entitled to a judgment as a matter of law." *Green,* 293 S.W.3d at 513 (citing *Martin v. Norfolk S. Ry.,* 271 S.W.3d 76, 83 (Tenn. 2008); *Amos v. Metro. Gov't of Nashville & Davidson County,* 259 S.W.3d 705, 710 (Tenn. 2008)). "The moving party may make the required showing and therefore shift the burden of production to the nonmoving party by either: (1) affirmatively negating an essential element of the nonmoving party's claim; or (2) showing that the nonmoving party cannot prove an essential element of the claim at trial." *Martin,* 271 S.W.3d at 83 (citing *Hannan v. Alltel Publ'g Co.,* 270 S.W.3d 1, 5 (Tenn. 2008)).[3] In order to negate an essential element of the claim, "the moving party must point to evidence that tends to disprove an essential factual claim made by the nonmoving party." *Id.* at 84 (citing *Blair v. W. Town Mall,* 130 S.W.3d 761, 768 (Tenn. 2004)). "It is not enough for the moving party to challenge the nonmoving party to 'put up or shut up' or even to cast doubt on a party's ability to prove an element at trial." *Hannan*, 270 S.W.3d at 8. "If the moving party is unable to make the required showing, then its motion for summary judgment will fail." *Martin*, 271 S.W.3d at 83 (citing *Byrd v. Hall,* 847 S.W.2d 208, 215 (Tenn. 1993)).

If the moving party does make a properly supported motion, "[t]he non-moving party must then establish the existence of the essential elements of the claim." *McCarley v. West Quality Food Serv.,* 960 S.W.2d 585, 588 (Tenn. 1998). The nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist. *Martin,* 271 S.W.3d at 84 (citing *McCarley,* 960 S.W.2d at 588; *Byrd,* 847 S.W.2d at 215). "The nonmoving party may satisfy its burden of production by: (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party;

---

[3]Recently, the Tennessee General Assembly enacted a law that legislatively reversed the Tennessee Supreme Court's holding in *Hannan*. *See* Tenn. Code Ann. § 20-16-101. However, the statute applies only to cases filed on or after July 1, 2011. Thus, in this appeal, we apply the summary judgment standard set forth in *Hannan*.

(2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06." *Id.* (citing *McCarley,* 960 S.W.2d at 588; *Byrd,* 847 S.W.2d at 215 n.6). "The nonmoving party's evidence must be accepted as true, and any doubts concerning the existence of a genuine issue of material fact shall be resolved in favor of the nonmoving party." *Id.* (citing *McCarley,* 960 S.W.2d at 588). The resolution of a motion for summary judgment is a matter of law, which we review de novo with no presumption of correctness.

## IV. DISCUSSION

"To hold a landlord liable for injury to a third person by a dog owned and kept by a tenant, two prongs must be proven with respect to the landlord: '(1) knowledge or notice of the vicious propensity of the dog, and (2) sufficient retained control over the leased premises to afford an opportunity for the landlord to require the tenant to remove the dog or safely restrain it.'" *Woodson v. MEG Capital Mgmt., Inc.*, 395 S.W.3d 140, 142 (Tenn. Ct. App. 2012) (quoting *Gilliland ex rel. Gilliland v. Pinkley*, No. W2009-00982-COA-R3-CV, 2001 WL 557985, at *3 (Tenn. Ct. App. May 23, 2001)). As stated above, the trial court granted summary judgment to the Fohts based upon the Fohts' lack of knowledge/notice of the dog's vicious propensities.

On appeal, Ms. King argues that summary judgment was inappropriate for two reasons. First, she contends that the Fohts had actual or constructive knowledge, through their agents, of the dog's vicious propensities. Specifically, she points to evidence that, during Ms, Redwing's tenancy, the Fohts' agents entered the 4900 Northdale Drive property to make "several repairs[,]" including a water leak repaired by property manager Terry Kerr, or his agent, in March 2010. She claims that "[o]n these occasions, Kerr and/or his agents observed or should have observed with ordinary diligence, the presence of a dog, or made further inquiry into the presence of a dog[]" and that they should have "become aware of its general reputation for violence."

Alternatively, Ms. King argues that the Fohts owed a duty of care to her daughter based upon the "no pets" provision in the lease between Ms. Redwing and the Fohts. Specifically, the lease provided, in relevant part:

> **20. Pets.** Lessee shall keep no domestic or other animals in or about the Leased Premises without the consent of the Lessor. All pets shall be subject to the approval or disapproval of the Lessor, and Lessor reserves the right to require payment of an additional nonrefundable deposit at time of pet approval. Lessor reserves the right to evict any pet from the Leased Premises

without cause at the pleasure of the Lessor. Lessee hereby agrees to be responsible for any and all damage caused by the aforementioned pets.

Essentially, Ms. King contends that, even if the Fohts or their agents were unaware of the dog's existence, the lease provision disallowing pets imposes a duty of care upon the Fohts to inspect for, and to remove, pets being kept in violation of the lease. She further contends, however, that the Fohts, through their agents, had knowledge of the dog's existence. Ms. King points to a "drive-by" video of the subject property filmed by Terry Kerr prior to his taking over its management, and she claims that still "images . . . show[] a dog-house as well as what appear to be dog-scratches on the front door."[4] Ms. King argues that the images indicate that Terry Kerr had actual or constructive knowledge of the presence of a dog on the property, and therefore, he had a duty pursuant to the lease to remove the dog.

In response, the Fohts argue that the evidence demonstrates that neither the Fohts nor their agents had any knowledge that Ms. Redwing even owned a dog, and in any event, that neither the presence of dog scratches on the residence door nor knowledge that a specific dog breed was housed therein is sufficient to put them on notice of the dog's vicious propensities. In support of their lack-of-knowledge argument, the Fohts cite their own affidavits in which they averred that they were unaware that a Pit Bull dog was being kept on the subject property. They also cite the deposition testimony of former property manager Harry Spore, who stated that he only learned of the dog's existence after the incident with Hailey King, as well as the deposition testimony of property manager Terry Kerr, who stated that neither he, nor his agent,[5] entered the subject property prior to the incident, and that a dog chain around a tree in Ms. Redwing's yard was not visible when he filmed the drive-by video.

Regarding a duty arising from the "no pets" provision of the lease, the Fohts contend that Ms. King lacks standing to enforce the contract because she is neither a party, nor a third party beneficiary, to it, and that a duty cannot arise through the Fohts' undertaking to render a service to Hailey King because the Fohts did nothing to increase the risk to the child, nor did the child rely upon the lease in any way. They further raise public policy arguments, contending that public policy does not support the creation of a duty simply through a "no pets" lease provision because the resulting duty would be overly burdensome to landlords and would serve to penalize landlords who include such lease provisions.

---

[4]Two black and white still images are included in the record; however, the images are dark and grainy and we cannot discern what is depicted.

[5]According to the Fohts, the plumber hired by Mr. Kerr to repair a leak in March 2010, was an independent contractor.

As referenced above, the trial court granted summary judgment in favor of the Fohts because it concluded that Ms. King had failed to demonstrate that the Fohts or their agents had knowledge of the dog's vicious propensities. Specifically, in its order granting summary judgment, the court found that "there is *no proof* to suggest that the Fohts or their agents had actual knowledge of a dog with a vicious propensity being kept on the property by the tenant." (emphasis added).

From our review, it appears that both the Fohts' arguments regarding summary judgment and the trial court's grant of summary judgment, were based upon the affidavit and deposition testimony of the Fohts and their agents that they lacked knowledge of the existence of the dog and/or of its vicious propensities. Under the rigorous *Hannan* standard, however, to obtain summary judgment, the Fohts must *negate* an element of Ms. King's negligence claim or show that she *cannot* establish the elements of her claim. The *Hannan* standard is simply not met by saying, as the Fohts do here, that Ms. King has *not yet* submitted evidence indicating the Fohts or their agents had knowledge of a dog with vicious propensities.

In their brief to this Court, the Fohts point out that the trial court allowed Ms. King additional time to exhaust discovery before ruling on the Fohts' motion for summary judgment, and they maintain that "[a]fter completing discovery, Plaintiff has nothing indicating that anyone, much less the Fohts or their agents, had knowledge and notice of a vicious propensity in the dog." **(Br. 4)**. However, as this Court recently explained in *White v. Target Corporation*, No. W2010-02372-COA-R3-CV, 2012 WL 6599814, at *7, n.3 (Tenn. Ct. App. Dec. 18, 2012), "under *Hannan*, . . . it is not enough to rely on the nonmoving party's lack of proof even where . . . the trial court entered a scheduling order and ruled on the summary judgment motion after the deadline for discovery had passed. Under *Hannan*, we are required to assume that the nonmoving party may still, by the time of trial, somehow come up with evidence to support her claim." By merely pointing to a lack of evidence proffered by Ms. King, the Fohts have not "disprove[d] an essential factual claim" made by Ms. King, and, therefore, they have not shifted the burden to Ms. King. **Martin**, 271 S.W.3d at 83 (citing *Hannan*, 270 S.W.3d at 5). Accordingly, we reverse the trial court's grant of summary judgment in favor of the Fohts and we remand for further proceedings. All remaining arguments are deemed pretermitted.[6]

---

[6]On remand, the Fohts may raise public policy arguments for consideration by the trial court.

## IV.  CONCLUSION

For the aforementioned reasons, we reverse the trial court's grant of summary judgment in favor of the Fohts and we remand for further proceedings.  Costs of this appeal are taxed to Appellees, Kenneth Foht and Laurie Fohts, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.